JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant, Robert Pedone ("Pedone") appeals from the trial court's entry granting summary judgment to defendants-appellees, Greg and Cheryl Demarchi ("the Demarchis"). Upon review, we conclude that no genuine issues of material fact exist, and the Demarchis are entitled to judgment as a matter of law. Accordingly, we affirm.
 {¶ 2} In December 2005, Pedone filed a complaint against the Demarchis for breach of contract, misrepresentation, and violation of statutory duty to disclose; and against Advantage Inspections, Inc. ("Advantage"), for breach of contract. Pedone claimed the Demarchis intentionally failed to disclose latent defects in property he purchased from them in Walton Hills, Ohio ("the property"); intentionally concealed *Page 3 
such defects; and intentionally misrepresented the condition of the property. Pedone further contended that Advantage failed to deliver the service for which it was paid.[1]
 {¶ 3} After discovery was completed, the Demarchis moved for summary judgment. The Demarchis argued that they were entitled to a judgment as a matter of law since Pedone did not establish a fraud claim; his claims were barred by the purchase agreement; and were barred by the doctrine of caveat emptor. To their motion, they attached transcripts of Greg Demarchi's and
 {¶ 4} Robert Pedone's deposition testimony, and copies of the Residential Property Disclosure Form ("the disclosure form") and the purchase agreement.
 {¶ 5} In opposing the Demarchis' motion, Pedone argued that summary judgment was not appropriate because he had produced ample evidence showing that genuine issues of material fact existed to support his claims. In support of his motion, Pedone submitted a letter from an inspector from Landmark Inspections ("Landmark") and a 1997 document from Roto Rooter.[2]
 {¶ 6} The facts the trial court had before it when it decided the summary judgment motion are as follows. *Page 4 
 {¶ 7} In late 2004, Pedone entered into a purchase agreement with the Demarchis to purchase the Walton Hills property. Prior to entering into the agreement, Pedone was given a copy of the disclosure form, which the Demarchis had filled out and executed when they put the property up for sale. In it, the Demarchis asserted that they did not know of any "current leaks, backups, or other material problems." However, they disclosed that "15 yrs ago in basement _ snaked out by city _ never problem again. [C]ause was from foreign objects in sewer line."
 {¶ 8} The purchase agreement contained an "inspection contingency" clause, permitting Pedone to have the home inspected before the purchase was completed. After the inspection, Pedone had the option of terminating the agreement, negotiating with the seller to fix any problems, or accepting the property "as is."
 {¶ 9} Pedone inspected the property himself at least four times before he purchased it. He also hired an inspector from Advantage to inspect the property, who did not report any problems with the sewer system. After the inspections were completed, Pedone accepted the property "as is." The purchase agreement specified that Pedone bought the property in its "`AS IS' PRESENT CONDITION."
 {¶ 10} Pedone took possession of the property on December 1, 2004. In January 2005, Pedone discovered water accumulation in the basement after the sewer backed up. He contacted a plumber who opened the floor drains in the basement. According to Pedone, the plumber observed that waste water was not draining properly, but he did not know the source of the problem. *Page 5 
 {¶ 11} Pedone then contacted Walton Hills, whose city inspector came to the house and determined that no waste water was reaching the street collection drain. Next, Pedone called Roto Rooter and it placed a camera into the sewer line to video the inside of it. Roto Rooter determined that the underground sewer line had a "belly or bow which prevented much or all of the waste from reaching the street connection."
 {¶ 12} A Landmark inspector, who after reviewing the Roto Rooter video and visiting the property, reached the same conclusion as Roto Rooter. In his "expert report," the inspector concluded: "[t]he sewer problems with this house are long standing and have probably existed since the original construction[;] [t]he mortar sealing of the basement floor drains indicate that the floor drains backed up enough times to become a nuisance, and the sealing was a deliberate attempt to prevent this from happening further[; and] [t]he improperly pitched 4 inch drains are a separate issue, which may or may not have affected the larger main drain situation."
 {¶ 13} A document from Roto Rooter, also attached to Pedone's response in opposition, showed that on April 6, 1997, the Demarchis made a service call to Roto Rooter. The document stated, "F/D IN BASEMENT IS BLOCKED." It further indicated: "HOLD 4/6 WHEN CALLED TO DISPATCH COST; HOLD SOLVED THE PROBLEM CANCELLED."
 {¶ 14} Mr. Demarchi did not deny that he made a service call to Roto Rooter in *Page 6 
 {¶ 15} April 1997, but says that he cancelled it because he fixed the problem himself.[3] He stated that the problem was caused by laundry "lint" clogging the drain after he moved the laundry room to the basement. He did not disclose it, however, because he did not believe it was related to the sewer back-up that had occurred fifteen years ago.
 {¶ 16} Pedone stated that prior to purchasing the property, he saw evidence of water stains on the floor in one of the storage rooms in the basement. He became concerned because a flip-out window to this storage room was open, even though it was cold outside. He said the seller's real estate agent tried to explain that the Demarchis used the room as a craft room, with glue and paint, and they were trying to air it out. Pedone testified, "Obviously, that's not what I really thought it was, but I did not think it was this. I just thought it was an animal problem."
 {¶ 17} Pedone also stated that he noticed that in this same storage room, the floor drains had been cemented over. He agreed that he did not, however, "take any steps either personally or through [his] inspector to investigate the source of the water stains on the floor in that room."
 {¶ 18} Greg Demarchi testified that he never experienced water problems in the basement, other than the one issue that he revealed in the disclosure form. He *Page 7 
explained that after the incident with the sewer system fifteen years ago, the city came out, and snaked out the line. He further testified that since he was not using the floor drains in the basement, he cemented over them. After doing this, Mr. Demarchi stated they never had a problem again.
 {¶ 19} Pedone raises two assignment of errors.
 {¶ 20} "[1.] The trial court erred to the prejudice of the plaintiff by granting
 {¶ 21} defendants motion for summary judgment despite the existence of significant evidence supporting plaintiff's claims.
 {¶ 22} "[2.] The trial court erred to the prejudice of the plaintiff's lawsuit because defendant's motion for summary judgment did not address plaintiff's statutory violation claims."
 {¶ 23} In both of his assignments of error, Pedone argues that he presented sufficient evidence to withstand summary judgment on his three causes of action; breach of contract, fraudulent misrepresentation, and violation of a seller's statutory duty to disclose under R.C. 5302.30(C) and (E). All three of these claims sound in intentional misrepresentation, whether based on intentional failure to disclose, fraudulent misrepresentation of the condition of the property, or fraudulent concealment, and as such, are inextricably intertwined. Thus, this court will address them together.
 {¶ 24} An appellate court reviews a trial court's grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102,105. "De novo review *Page 8 
means that this court uses the same standard that the trial court should have used, and will examine the evidence to determine if, as a matter of law, no genuine issue exists for trial." Brewer v. Cleveland CitySchools (1997), 122 Ohio App.3d 378, 383, citing Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116, 119-120.
 {¶ 25} Summary judgment is appropriate where it appears that (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v.Willis Day Warehousing Co. Inc. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 26} The burden is on the movant to show that no genuine issue of material fact exists. Id. Conclusory assertions that the nonmovant has no evidence to prove its case are insufficient, the movant must specifically point to evidence contained within the pleadings, depositions, answers to interrogatories, written admissions, and affidavits, which affirmatively demonstrate that the nonmovant has no evidence to support his claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 293; Civ.R. 56(C). Unless the nonmovant then sets forth specific facts showing there is a genuine issue of material fact for trial, summary judgment will be granted to the movant.
 {¶ 27} Material facts are those "that might affect the outcome of the suit under the governing law[.]" Turner v. Turner (1993),67 Ohio St.3d 337, 340, quoting *Page 9 Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242. "Whether a genuine issue exists is answered by the following inquiry — Does the evidence present `a sufficient disagreement to require submission to a jury' or is it `so one-sided that one party must prevail as a matter of law[?]'"Turner, supra, at 340, quoting Anderson, supra, at 251-252.
 {¶ 28} The elements of fraudulent misrepresentation are: "(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." Cardi v.Gump (1997), 121 Ohio App.3d 16, 22, citing Schlect v. Helton (Jan. 16, 1997), 8th Dist. No. 70582, 1997 Ohio App. LEXIS 114.
 {¶ 29} Fraud may be committed not only by affirmative misrepresentation or concealment, but also by nondisclosure when there is a duty under the circumstances to disclose. Parahoo v. Mancini (Apr. 14, 1998), 10th Dist. No. 97APE08-1071, 1998 Ohio App. LEXIS 1630, at 19. The elements of fraudulent inducement are essentially the same as those for fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure. Information Leasing Corp. v. Chambers,152 Ohio App.3d 715, 2003-Ohio-2670, at _84. *Page 10 
 {¶ 30} "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." Layman v. Binns (1988), 35 Ohio St.3d 176, syllabus. The rule of caveat emptor makes buyers responsible for discovering patent defects, which are defects that an ordinary person would discover upon inspection. Layman, supra. Sellers may be liable for failing to disclose latent defects, which they are aware of, and which are not readily observable or discoverable upon reasonable inspection. See id.
 {¶ 31} While the doctrine of caveat emptor still applies, the Ohio real property disclosure statute, R.C. 5302.30, requires sellers of real estate to disclose patent or latent defects — that are within theiractual knowledge on a residential property disclosure form. The statute requires that the disclosure be made in good faith, which "means honesty in fact in a transaction." R.C. 5302.30(A)(1). If the seller fails to disclose a material fact on the disclosure form with the intention of misleading the buyer and the buyer relies on the form, the seller is liable for any resulting injury. See Juan v. Harmon (Mar. 5, 1999), 1st Dist. No. C-980587, 1999 Ohio App. LEXIS 833. *Page 11 
 {¶ 32} However, the disclosure form is not a substitute for a buyer's inspection. See Clark v. Allen, 154 Ohio App.3d 200, 2003-Ohio-4617. The duty under the statute to conduct a full inspection falls upon the buyer, not the seller. See id;
 {¶ 33} d.; R.C. 5302.30(D). "When a plaintiff claiming fraud in the sale of property has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed." See Nunez v. J.L. Sims Co., Inc., 1st Dist. No. C-020599, 2003-Ohio-3386.
 {¶ 34} Finally, the seller has no duty to disclose latent defects if a purchase agreement states that the buyer purchases real property in its "as is" physical condition. Eiland v. Coldwell Banker Hunter Realty
(1997), 122 Ohio App.3d 446, 457. An "as is" clause in a real estate purchase agreement bars suit for passive non-disclosure, but does not protect a seller from action alleging positive misrepresentation or concealment. Vecchio v. Kehn (Aug. 18, 1994), 8th Dist. No. 66067, 1994 Ohio App. LEXIS 3622, at 9; Kossutich v. Krann (Aug. 19. 1990), 8th Dist. No. 57255, 1990 Ohio App. LEXIS 3449, at 6.
 {¶ 35} The evidence in the instant case establishes that the Demarchis disclosed, under the "sewer system" section of the disclosure form, a problem that they had with the system fifteen years prior to filling out the form. They averred that the problem was caused by "foreign objects in the sewer line." However, they indicated that the city "snaked out" the drain, and they had never experienced a problem since then. The Demarchis affirmatively noted on the form that they were *Page 12 
not aware of any current issues with the system leaking, backing up, or any other material problems.
 {¶ 36} Prior to purchasing the property, Pedone inspected it himself, at least four times. He also hired a home inspector to inspect the property. He admitted that he saw old water stains on the basement floor, saw that the floor drains had been cemented over, and noticed an odor in the basement. He did not investigate into these issues further, however, nor did he request his home inspector look into them.
 {¶ 37} Pedone clearly had notice that there may be sewer drainage and water problems. His testimony shows that he had concerns prior to purchasing the home. He was not limited in his inspection of the property. A reasonable inspection into these issues would have revealed the drainage problem, as it was easily done soon after he purchased the home.
 {¶ 38} Furthermore, there is no evidence the Demarchis misrepresented anything to Pedone. They made all the disclosures required by law. In fact, they disclosed more than they were required to. The drainage problem that they disclosed had occurred fifteen years prior. R.C.5302.30 only requires sellers to disclose problems that occurredwithin the previous five years from the date the form is completed.
 {¶ 39} Pedone maintains the 1997 Roto Rooter document and his "expert's report" raise a question of fact as to whether the Demarchis knew of an existing problem with their basement floor drains backing up, causing unresolved water *Page 13 
leakage in the basement. Pedone further argues that because the Demarchis did not disclose the 1997 problem in the disclosure form, it shows they intentionally misrepresented the problem. We disagree.
 {¶ 40} There is nothing in the "expert's report" which reveals the Demarchis knew that a problem existed in their drainage lines or that they intentionally failed to disclose a problem. Mr. Demarchi reiterated in his deposition that they had not had any problems with the drain since the city fixed it fifteen years prior. Pedone's "expert report" may opine that "the sewer problems with this house are long standing," but it does nothing to raise a question of fact as to whether the Demarchis were aware of these problems or that they did in fact continue to have them.
 {¶ 41} Additionally, the Roto Rooter document does not raise a question of fact as to an ongoing problem or the Demarchis knowledge of an ongoing problem. Mr. Demarchi explained that when he moved the washer and dryer to the basement, lint clogged the drain. He fixed it himself and cancelled the service request to Roto Rooter. There is nothing in the record that contradicts his testimony. Indeed, the Roto Rooter document confirms what he said. Moreover, the Demarchis were not required by law to disclose this problem, as it had occurred in 1997, seven years prior to them filling out the disclosure form in 2004.
 {¶ 42} And, Pedone entered into a purchase agreement where he agreed to purchase property "as is." Absent a showing of intentional misrepresentation or concealment, it was his responsibility to fully inspect the property, especially when *Page 14 
he was aware that there may be a problem. He failed to do so. Ohio law does not make sellers liable for material problems which they had no knowledge of.
 {¶ 43} Thus, we conclude that the evidence does not raise genuine issues of
 {¶ 44} material fact as to any intentional misrepresentations made by the Demarchis. As such, they are entitled to judgment as a matter of law.
 {¶ 45} Accordingly, we affirm.
It is ordered that appellees recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY JANE BOYLE, JUDGE
PATRICIA A. BLACKMON, P.J., CONCURS; ANN DYKE, J., CONCURS IN JUDGMENT ONLY
[1] On June 28, 2006, the trial court dismissed Advantage and compelled arbitration of Pedone's claims against it.
[2] In his response motion, Pedone referred to this letter as an "expert report." Since there were no objections to its admissibility or motions to strike filed, and for ease of discussion, this court will also refer to it as the "expert report."
[3] Pedone argues that Cheryl Demarchi contradicted her husband's testimony regarding the cause of the earlier flood; however, her deposition is not in the record on appeal. *Page 1