[Cite as *McDonald v. JP Dev. Group, L.L.C.*, 2013-Ohio-3914.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99322**

## BRIAN McDONALD, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## JP DEVELOPMENT GROUP, L.L.C., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-763215

**BEFORE:** McCormack, J., Stewart, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:** September 12, 2013

**ATTORNEY FOR APPELLANTS**

Daniel S. White
34 Parmelee Drive
Hudson, OH 44236


**ATTORNEY FOR APPELLEE**S

John F. Burke, III
Burkes Law, L.L.C.
614 West Superior Avenue
Rockefeller Bldg., Suite 1500
Cleveland, OH 44113

TIM McCORMACK, J.:

**{¶1}** Plaintiffs-appellants, Brian McDonald ("McDonald") and Danielle Santiago ("Santiago"), appeal the trial court's granting of defendants-appellees, Jason Gedeon ("Gedeon") and JP Development Group L.L.C.'s ("JP Development"), motion for dismissal. For the reasons that follow, we affirm the trial court's decision.

## Procedural History and Substantive Facts

**{¶2}** On August 30, 2011, McDonald and Santiago filed a complaint against Gedeon and JP Development, alleging fraud and fraudulent inducement, or mutual mistake of fact, with respect to the purchase of their home. A bench trial was held on the matter on November 26, 2012. Upon the conclusion of the plaintiffs-appellants' case, JP Development and Gedeon moved for dismissal, which the trial court granted. This timely appeal followed.

**{¶3}** JP Development, a limited liability company, purchased residential property on Lincoln Road in Cleveland Heights from a bank taking title in January 2009. JP Development owned the property for little more than one year prior to selling the home to McDonald and Santiago. Gedeon, the sole member of JP Development, never occupied the home.

**{¶4}** In January 2010, McDonald and Santiago entered into a purchase agreement to buy the Cleveland Heights property. The purchase agreement indicated that the property was being sold "as is," and it allowed for an inspection of the property prior to

purchase. The residential property disclosure form indicated that new plumbing was installed in 2009 as well as a new roof and gutters. The form also indicated that the crawl space has a new moisture barrier. On the form, Gedeon denied having any knowledge of drainage or erosion issues or any structural defects with the foundation, basement and crawl space, floors, or walls of the home. Gedeon testified that he had the following services performed on the house: loose mortar was cleaned up, loose bricks were tuck-pointed, and the walls and floors in the home were painted. He also testified that he did not notice any water infiltration or moisture in the home in the course of performing these repairs.

{¶5} Prior to purchasing the home, McDonald testified that he had been in the home multiple times. During these visits, McDonald had a house inspection and inspections for radon and pests. McDonald observed the fresh paint in the basement and testified that the basement looked "bone dry" and he saw no problems with the basement. McDonald testified that the home inspector told him that there was normal moisture for an older Cleveland Heights home and that he recommended the use of a dehumidifier. On cross-examination, McDonald testified that Gedeon never made any specific statements to him about the basement.

{¶6} McDonald and Santiago took possession of the home in March 2010. After the first rain came, McDonald and Santiago saw water intrusion in the basement, occurring thereafter every time it rained. McDonald testified that several areas of the foundation leaked, there is significant water seepage through the basement walls, and the

concrete floor is disintegrating. He further testified that his home inspector did not advise him to expect such problems. McDonald attempted to alleviate the problem himself by snaking the storm lines and unclogging the drain by hand, to no avail. Robert Mural, from Mural & Son Inspectional Service, Inc., testified that the water infiltration was likely caused by improperly functioning footer drains, a leaking foundation, and backfill materials not conducive to proper drainage. Mural stated that the cost to repair the basement is $21,922.

## Assignment of Error

The trial court's decision to grant the motion to dismiss in this matter constitutes reversible error on the appellants' fraud claim.

## Law and Analysis

{¶7} At the conclusion of appellants' case during a bench trial, appellees moved to dismiss the case against Jason Gedeon, personally, and JP Development. The trial court granted Gedeon's motion, finding that Gedeon was not a proper party to the litigation. McDonald and Santiago do not raise this issue as error on appeal, and therefore, we will not address the motion to dismiss as it pertains personally to Gedeon.

{¶8} JP Development moved the trial court to dismiss the claims of fraud and mistake of fact, stating that McDonald and Santiago failed to present adequate evidence to support their claim against JP Development.[1] Civ.R. 41(B)(2) provides the procedure for an involuntary dismissal in a bench trial:

---

[1]While the trial judge inadvertently referred to JP Development's motion as a motion for a

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence * * *.

Upon a defendant's motion under Civ.R. 41(B)(2), the trial court's role is "to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant if the plaintiff has shown no right to relief." *Bank One, Dayton, N.A. v. Doughman*, 59 Ohio App.3d 60, 63, 571 N.E.2d 442 (1st Dist.1988). The trial court must, therefore, determine whether plaintiff has established his or her case by a preponderance of the evidence. *Pacher v. Invisible Fence of Dayton*, 154 Ohio App.3d 744, 2003-Ohio-5333, 798 N.E.2d 1121, ¶ 29 (2d Dist.), citing *L.W. Shoemaker, M.D., Inc. v. Connor*, 81 Ohio App.3d 748, 752, 612 N.E.2d 369 (10th Dist.1992).

{¶9} Upon review, the findings of the trial court will not be overturned unless they are against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. An appellate court will not reverse the decision of a trial court for being against the manifest weight of the evidence if the decision of the trial court is supported by competent, credible evidence. *Id.* at 280.

directed verdict, we note that a motion for a directed verdict applies only to a jury trial. Civ.R. 50; *Am. Family Ins. Co. v. Johnson*, 8th Dist. Cuyahoga No. 88023, 2007-Ohio-7271, ¶ 8. Where a bench trial is held, a motion for a directed verdict will be treated as a motion for involuntary dismissal under Civ.R. 41(B)(2). *Id.* We, therefore, apply the Civ.R. 41(B)(2) standard of dismissal in this case.

**{¶10}** For the reasons that follow, we find that the judgment of the trial court was supported by competent, credible evidence.

Fraud

**{¶11}** McDonald and Santiago claim that JP Development fraudulently induced them into purchasing their Cleveland Heights home by failing to disclose or affirmatively denying the existence of water seepage in the basement of the home. As a general rule, Ohio follows the doctrine of caveat emptor in all real estate transactions, which precludes a purchaser from recovering for a structural defect if: "(1) the condition complained of is open to observation or discoverable upon reasonable inspection; (2) the purchaser had the unimpeded opportunity to examine the premises; and (3) there is no fraud on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988), syllabus.

**{¶12}** In determining whether a defect is open to observation or reasonably discoverable, the issue is ultimately whether the facts were such that a reasonably prudent person would be put on notice of a possible problem. *Yahner v. Kerlin*, 8th Dist. Cuyahoga No. 82447, 2003-Ohio-3967, ¶ 18, citing *Tipton v. Nuzum*, 84 Ohio App.3d 33, 38, 616 N.E.2d 265 (9th Dist.1992). Once alerted to a possible defect, a purchaser may not sit back and then raise his lack of expertise when a problem arises. Upon becoming aware of a possible problem, the buyer has a duty to either (1) make further inquiry of the owner, or (2) seek the advice of someone with sufficient knowledge to appraise the defect. *Id.*

**{¶13}** As noted above, caveat emptor does not apply when the decision to purchase has been induced by fraud. In order to establish fraud, a purchaser must show: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

**{¶14}** As this court has previously held, if a seller fails to disclose a material fact on a residential property disclosure form with the intention of misleading the buyer, and the buyer relies on the form, the seller is liable for any resulting injury. *Wallington v. Hageman*, 8th Dist. Cuyahoga No. 94763, 2010-Ohio-6181, ¶ 18, citing *Pedone v. Demarchi*, 8th Dist. Cuyahoga No. 88667, 2007-Ohio-6809, ¶ 31. When a buyer has had the opportunity to inspect the property, however, "he is charged with knowledge of the conditions that a reasonable inspection would have disclosed." *Wallington*; *Pedone* at ¶ 33.

**{¶15}** The purchase agreement in this case contained an "as is" clause, which essentially disclaims any warranties made by the seller. In such case, a buyer, therefore, agrees to make his or her own appraisal of the bargain and accept the risk that he or she may be wrong. *Kern v. Buehrer*, 8th Dist. Cuyahoga No. 97836, 2012-Ohio-4057, ¶ 5,

citing *Tipton*, 84 Ohio App.3d at 39, 616 N.E.2d 265. An "as is" clause, however, does not prevent recovery where a buyer has demonstrated that a seller has engaged in fraud. *Kern*, citing *Brewer v. Brothers*, 82 Ohio App.3d 148, 151, 611 N.E.2d 492 (12th Dist.1992).

{¶16} In this case, McDonald and Santiago elected to have the home inspected. McDonald attended the inspection. During the inspection, the inspector told McDonald that there was "normal moisture for Cleveland Heights" and he recommended the use of a dehumidifier. Following the inspection, McDonald and Santiago purchased the property "as is."

{¶17} Gedeon testified that he had no knowledge of any water problems in the basement. Furthermore, knowledge of the water problem cannot be inferred from the facts of the case. The evidence shows that JP Development is in the business of buying and selling homes. In the course of this business, JP Development purchased the Cleveland Heights home, made certain repairs, and in little more than a year, sold the property to McDonald and Santiago. During that time period, the house was unoccupied. The fact that Gedeon painted the basement walls and floor alone does not necessarily establish that Gedeon knew of a water problem and attempted to conceal it. Further, McDonald and Santiago had the home inspected by a professional home inspector who failed to discover significant water problems with the basement during the course of his inspection.

**{¶18}** In light of the above, we find that the trial court's determination that there was no fraud on the part of JP Development was supported by competent, credible evidence.

## Mutual Mistake of Fact

**{¶19}** McDonald and Santiago alternatively claim that they are entitled to rescission of the purchase agreement due to a mutual mistake of fact and the trial court incorrectly rejected this claim. We disagree.

**{¶20}** Ohio recognizes the doctrine of mutual mistake of fact as a ground for the rescission of a real estate contract where: (1) there is a mutual mistake as to a material fact in the contract; and (2) the complaining party is not negligent in failing to discover the mistake. *Reilley v. Richards*, 69 Ohio St.3d 352-353, 1994-Ohio-528, 632 N.E.2d 507. "A mistake is material to a contract when it is 'a mistake * * * as to a basic assumption on which the contract was made [that] has a material effect on the agreed exchange of performances.'" *Id.* at 353, quoting 1 Restatement of the Law 2d, Contracts (1981) 385, Mistake, Section 152(1). The intention of the parties, therefore, "must have been frustrated by the mutual mistake." *Id.*

**{¶21}** In this case, McDonald and Santiago entered into a purchase agreement for the Cleveland Heights property "as is," following an inspection of the home. This court has previously held that, under such facts, the buyers cannot argue that the absence of water problems in the basement was "a basic assumption upon which the contract was made." *Wallington*, 8th Dist. Cuyahoga No. 94763, 2010-Ohio-6181, at ¶ 27. This

court further determined that "the claimed defects in the property as to water intrusion issues do not go to the character of the property, were not material to the completion of the contract, and did not frustrate either side's ability to complete the contract." *Id.* Moreover, McDonald and Santiago do not demonstrate that, because of the water intrusion, the home has lost a significant portion of its fair market value or has become uninhabitable. *Novotny v. Fierle*, 11th Dist. Lake No. 2011-L-148, 2012-Ohio-4007, ¶ 30 (finding that the development of the new water seepage problem did not materially affect a basic underlying assumption of the parties' purchase agreement).

{¶22} Additionally, McDonald testified that he observed fresh paint on the basement walls and floor and the home inspection revealed moisture in the basement. These observations should have, upon the exercise of due care, alerted McDonald and Santiago and their home inspector of the possibility of a water problem prior to the purchase of the home. *Id.*

{¶23} As such, the trial court's conclusion that there was no mutual mistake of fact in this case is supported by competent, credible evidence and its decision, therefore, will not be reversed.

{¶24} McDonald and Santiago's sole assignment of error is overruled.

{¶25} Judgment affirmed.

It is ordered that appellees recover of appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., and
LARRY A. JONES, SR., J., CONCUR