OPINION
{¶ 1} This is an appeal from a summary judgment for Defendants, John and Barbara Belluardo, on a claim for relief alleging their fraudulent nondisclosure of a latent defect in residential real property Defendants sold to Plaintiffs, James and Jennifer Decaestecker.
 {¶ 2} The property is a parcel of residential real *Page 2 
property located at 1035 Hidden Ridge Lane in Montgomery County. Defendants had owned and occupied the property since 1995 when they sold it to Plaintiffs in the summer of 2002.
 {¶ 3} The residence situated on the property is a large, single-family home. It was built in 1929. Water is supplied to the house and property through a two-inch galvanized metal private line that connects to a public water supply main on McEwen Road, a nearby thoroughfare.
 {¶ 4} The connection to the public water main at McEwen Road is on property situated at 6633 McEwen Road, but that property is not itself served by the private water line. Instead, the private line crosses that property to serve the adjoining properties at 1015 and 1035 Hidden Ridge Lane. The line splits on the property at 1015 and a branch serves the property at 1035 that was sold by Defendants to Plaintiffs.
 {¶ 5} At some time in 2000, water began flowing from the surface of the property at 1015 Hidden Ridge Lane in copious amounts. It was determined that the cause was a leak in the private water line below. Though the point of leakage was not on their property at 1035 Hidden Ridge Lane, the Belluardos proposed to share the cost of repair with the owner of 1015 because the same line serves both properties.
 {¶ 6} In his deposition, Defendant John Belluardo *Page 3 
testified that he proposed to the owner of 1015 Hidden Ridge Lane that, instead of repairing the leak in the water line, they should replace the entire old line with a new water line and split the cost. The Montgomery County Sanitary Engineering Department objected to the proposal, but offered an alternative.
 {¶ 7} By letter to Defendant Belluardo dated June 12, 2000, captioned "Non Conforming Water Service 1015 and 1035 Hidden Ridge Lane," the Department advised the owners of both properties that it would instead approve the repair of the leak in the existing line, "at their expense," in accordance with the following terms:
 {¶ 8} "1) The property owners will repair their 2" water service with a material of their choice conforming to the Montgomery County Plumbing Department's regulations.
 {¶ 9} "2) The property owners will install a 1" water meter, per Montgomery County Sanitary Engineering Department rules and regulations on the combined 2" water service for 1015 1035 Hidden Ridge Lane (std drawing attached). This meter will be located at the road right-of-way line on McEwen Road, on the existing service.
 {¶ 10} "3) The property owner will obtain all necessary permits required for the above noted work items from the *Page 4 
Montgomery County Sanitary Engineering Department and the Combined Health
 {¶ 11} District Plumbing Department.
 {¶ 12} "4) The Montgomery County Sanitary Engineering Department will grant a variance to its Rules and Regulations for this repair. The property owners will agree to connect to a future water line, once installed in Hidden Ridge Lane. It will be the property owners responsibility to pay for the relocation of their water service lines and meters in accordance with the Rules and Regulations at that time.
 {¶ 13} "The property owners further agree to pay all applicable connection fees for said relocation and shall completely relocate this water service within 120 days of receipt of written notification that water main is available in Hidden Ridge Lane from the Montgomery County Sanitary Engineering Department."
 {¶ 14} Defendant Belluardo and his neighbor asked Nugent Plumbing, Inc. to perform the work required by the Department. By letter dated May 10, 2001, the Department advised Defendant that, though Nugent Plumbing, Inc. had indicated its intention to perform the work, "Nugent Plumbing has never pulled a permit for this work." Further, because inspections revealed that no work had been done, the Department advised *Page 5 
Defendant Belluardo as follows:
 {¶ 15} "This letter is your final written notification that you have 30 days from the date of this letter to make the necessary repairs to the service line and have the meter installed. If permits are not pulled and this work is not accomplished in this time frame, your water service may be turned off until the repair is made per Section 3.9.09 of the MCSED Rules and Regulations. The MCSED could and may install a meter pit (you would be billed for the material and labor to install the pit, approximate cost of $3,000) in the line, if you do not have a plumber install one yourself to measure the amount of water leakage in your service line. If this meter records more water usage then [sic] the total of both yours and Adam's (1015 Hidden Ridge Lane), you would be billed for ½ that amount."
 {¶ 16} Defendant John Belluardo testified that the required repair of the leak on the property at 1015 Hidden Ridge Lane and installation of a water meter at the McEwen Road connection was subsequently performed by Waker Plumbing, Inc. The work was completed on December 19, 2001. Belluardo and his neighbor each paid $1,558.00, one-half the total cost. John Belluardo further testified that, from that time, he was unaware of any further problem with the water supply or *Page 6 
service to his property.
 {¶ 17} On May 8, 2002, the Belluardos signed a contract to sell their property at 1035 Hidden Ridge Lane to Plaintiffs, James and Jennifer Decaestecker, who were moving to the Dayton area from Pennsylvania, for a price of $655,000. The Decaesteckers inspected the property. They also had inspections performed. As a result, the Belluardos agreed to compensate the Decaesteckers for $13,000 in various repairs they deemed necessary. None of those repairs involved the water service to the property.
 {¶ 18} When the sales contract was signed, the Belluardos executed and furnished the Decaesteckers a Residential Property Disclosure Form required by R.C. 5301.30, in the form then prescribed by the director of commerce and published at O.A.C. 1301:1-4-10. Three particular inquiries and responses are pertinent to this dispute.
 {¶ 19} First, at paragrapah A), after indicating that the source of the water supply to the property is "Public Water Service," the Belluardos were asked: "If owner knows of any current leaks, backups or other material problems with the water supply system or quality of the water, please describe:" The form provides space for an answer. The Belluardos left the space blank. *Page 7 
 {¶ 20} Second, at paragraph J), captioned "Code Violations," the Belluardos were asked: "Have you received notice of any building or housing code violations currently affecting the use of the property?" The Belluardos checked the box for "no."
 {¶ 21} Third, at paragraph L), captioned "Other Known Material Defects, the following inquiry is posed: "The following are other known material defects currently in or on the property:" Space for the answer is provided. The Belluardos again left the space blank.
 {¶ 22} The sale was closed within two months after the contract was signed. The Decaesteckers moved in following the closing. They soon experienced physical problems with the condition of the property. The only one of those which is pertinent to this appeal is water entering the basement.
 {¶ 23} James Decaestecker testified that, especially following moderate to heavy rainfall, water seeps into the basement of the house at the seam where the walls join the floor. He further testified that several plumbers have opined that the condition results from extremely heavy hydrostatic pressure from water in the ground outside, and that the pressure is caused by a leak or leaks in the water line serving the house. Repairs were made, which included *Page 8 
installation of a bypass around a leak in the line, but water continues to flow into the basement when moderate to heavy rainfall occurs.
 {¶ 24} In investigating the causes of the water leakages in his basement, Decaestecker discovered the letters that the Montgomery County Department of Sanitary Engineering sent the Belluardos in 2000 and 2001. By letter dated June 5, 2005, the Department advised Decaestecker that, due to the prior leak, the water service to the property "was in non-compliance in June of 2000," but that the work required to repair the prior leak had apparently been performed. The letter continued:
 {¶ 25} "Today, since a new leak(s) has developed we will continue to abide by the conditions that were set in the June 2000 letter sent to Mr. Belluardo and Mr. Adams, the previous owners.
 {¶ 26} "1) The property owners will repair their 2" water service with material of their choice, conforming to the Montgomery County Plumbing Department's regulations.
 {¶ 27} "2) The property owner will obtain all necessary permits required for the above noted work items from Montgomery County Sanitary Engineering Department And the Combined Health District Plumbing Department. *Page 9 
 {¶ 28} "3) The Montgomery County Sanitary Engineering Department is continuing to grant a variance to its rules and regulations for this additional repair. The property owners will agree to connect to a future water line, once installed in Hidden Ridge Lane. It will be the property owner's responsibility to pay for[1]
 {¶ 29} "4) The property owners further agree to pay all applicable connection fees for said relocation and shall completely relocate this water service within 120 days of receipt of written notification that the water main is available in Hidden Ridge Lane from the Montgomery County Sanitary Engineering Department.
 {¶ 30} "Also the monitoring meter that was installed on the property of 6633 McEwen Road per the 2000 letter has been reactivated. If this meter records more water usage than the total of the meter readings for the properties of 1015 and 1035 Hidden Ridge Lane. The difference will be equally split and billed to both properties."
 {¶ 31} The Decaesteckers commenced the underlying action against the Belluardos on November 7, 2005, on a claim for relief alleging fraudulent nondisclosure of a latent defect in *Page 10 
the property, of which the Belluardos knew when they sold the property to the Decaesteckers. Specifically, the Plaintiffs relied on the Belluardos' failure, in their non-response to questions posed by the Residential Property Disclosure Form at paragraphs A), J), and L), to reveal their knowledge of the water meter that had been installed to monitor the occurrence of additional leaks and the resulting prospect that owners of the property would be required to pay for relocation of their private line to connect with any new public water main that might be installed on Hidden Ridge Lane.
 {¶ 32} The Belluardos answered and subsequently moved for summary judgment. They contended that, applying the doctrine of caveat emptor, a provision in the sales contract that the property was sold "as is" bars them from liability on a claim for fraudulent nondisclosure. The Belluardos also contended that fraudulent nondisclosure could not be proved because they were not aware of any current water leak when they sold the property to the Decaesteckers. The motion and a memorandum contra was submitted to the court on the deposition testimony of the parties.
 {¶ 33} The trial court granted the Belluardos' motion for summary judgment, holding that an "as is" provision in the sales contract bars the Decaesteckers' claim for fraudulent *Page 11 
nondisclosure. The Decaesteckers filed a timely notice of appeal.
ASSIGNMENT OF ERROR
 {¶ 34} "THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT."
 {¶ 35} Summary judgment may not be granted unless the entire record demonstrates that there is no genuine issue of material fact and that the moving party is, on that record, entitled to judgment as a matter of law. Civ. R. 56. The burden of showing that no genuine issue of material fact exists is on the moving party. Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made. Morris v. First NationalBank Trust Co. (1970), 21 Ohio St.2d 25. In reviewing a trial court's grant of summary judgment, an appellate court must view the facts in a light most favorable to the party who opposed the motion. Osborne v.Lyles (1992), 63 Ohio St.3d 326. Further, the issues of law involved are reviewed de novo. Nilavar v. Osborn (1998), 127 Ohio App.3d 1.
 {¶ 36} At common law, the rights and duties applicable to the sale of real property are governed by the doctrine caveat emptor; "let the buyer beware." The doctrine is a rule of contract law, holding that purchasers buy at their own risk. *Page 12 
Thus, purchasers are charged with a duty to inspect real property before they buy it, in order to decline the opportunity or to factor the cost of repairing any defect they discover into an offer they make. The Decaesteckers did that in the present case when they required the Belluardos to pay $13,000 to correct defects the Decaesteckers discovered.
 {¶ 37} Caveat emptor only applies, however, to patent defects: those which are readily discoverable to prospective purchasers on inspection. The purchaser does not likewise assume the risk of latent defects: those which are not readily discoverable. However, neither does the seller have a duty to disclose the existence of latent defects unless he knows of them. A seller's failure to disclose the existence of a known latent defect may constitute fraud, which is actionable. Three types of such fraud may exist in real estate transactions: fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure.Kaye v. Buhrle (1938), 8 Ohio App.3d 321.
 {¶ 38} The gist of the Decaesteckers' claim for relief against the Belluardos is a claim for fraudulent nondisclosure of a latent defect. As opposed to fraudulent misrepresentation or concealment, which each involve positive acts, fraudulent nondisclosure involves an omission to act *Page 13 
when the seller has a duty to act. However, when the buyer accepts the property in an "as is" condition, the seller is relieved of any duty to disclose. Id.; Dennison v. Koba (1993), 86 Ohio App.3d 605. An action for fraudulent nondisclosure then cannot lie.
 {¶ 39} The trial court granted the Belluardos' motion for summary judgment on a finding that the "as is" exception to liability applies. The court relied on a provision of the Contract To Purchase Real Estate the parties signed, a form prescribed for use by the Dayton Area Board of Realtors. At lines 71-72, in a paragrapah captioned "General Provisions," the contract states: "Purchaser has examined the Property and, except as otherwise provided in this Contract, is purchasing it `as is' in its present condition, relying upon such examination as to the condition, character, size, utility and zoning of the Property."
 {¶ 40} In order to relieve the seller of his common law duty to disclose the existence of latent defects of which the seller knows, an "as is" provision necessarily must be unconditional. The provision in the parties' contract is instead conditional. Indeed, by its terms the provision is limited to patent defects, those which are discoverable upon inspection, which does not include latent defects. Therefore, *Page 14 
the trial court erred when it granted summary judgment on a finding that the "as is" clause in their contract relieved the Belluardos of any duty to disclose to the Decaesteckers the existence of any latent defects known to the Belluardos.
 {¶ 41} When a court of appeals determines that the trial court committed error prejudicial to the appellant in a final order or judgment on review and that the appellant is entitled to have judgment entered in his favor on the issue of law concerned, the court of appeals must reverse the judgment of the trial court and either enter the judgment the trial court should have entered or remand the case to the trial court for that purpose. App. R. 12(B). However, even when the appellate court finds that prejudicial error occurred, it is not required to reverse when the court finds that the appellant is not entitled to judgment as a matter of law. The court of appeals may reach that result if it can decide the issue on different grounds, which it may do so long as the evidentiary basis on which the appellate court decides the issue was adduced before the trial court and made a part of its record. State v. Peagler, 76 Ohio St.3d 496, 1996-Ohio-73. Affirming on other grounds a summary judgment against a party that was erroneously granted does not prejudice the party's due process rights where all evidence material to the issue decided is *Page 15 
before the appellate court, the record shows that no genuine issue of material fact exists, and the adverse party is entitled to judgment as a matter of law. State ex rel. Newell v. Cuyahoga Cty. Court of CommonPleas, 77 Ohio St.3d 269, 1997-Ohio-76.
 {¶ 42} As an alternative ground for relief for their motion for summary judgment, the Belluardos argued that fraudulent nondisclosure could not be proved because they were unaware of any water leak they were required to disclose when they sold the property to the Decaesteckers. That issue implicates the Belluardos' non-responses to specific questions posed by the Residential Property Disclosure Form they signed and provided the Decaesteckers.
 {¶ 43} R.C. 5302.30, which became effective in 1993, charges the director of commerce to prescribe a disclosure form that sellers of residential real property must provide to purchasers, "designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred, including, but not limited to, the source of the water supply to the property . . . and any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D). A duty of good faith is imposed on the seller, R.C. 5302.30(E)(1), *Page 16 
though liability for nondisclosure does not apply to matters "not within the transferor's actual knowledge." R.C. 5302.30(F)(1). The requirements the section imposes do not limit or abridge any duty to disclose "in order to preclude fraud, either by misrepresentation, concealment, or nondisclosure in a transaction involving the transfer of residential real property." R.C. 5302.30(J).
 {¶ 44} The director of commerce has prescribed a Residential Property Disclosure Form to be provided by transferors of residential real property. See O.A.C. 1301:1-4-10. The director has modified the form in several respects since it was first published. The current version became effective on January 1, 2007. Unlike the version of the form the Belluardos were required to provide the Decaesteckers in 2001, the questions the present form asks apply to not only "current" conditions but also to some that existed within the preceding five years.
 {¶ 45} A seller's responses or nonresponses to the questions posed by the Residential Property Disclosure Form do not warrant the good condition of the property. Rather they constitute the owner's representations concerning his actual knowledge of the condition of the property in respect to the particulars specified. A variance between the owner's *Page 17 
representations and the truth and fact of the matters concerned may be a basis for a claim of fraud, and the seller's duty of good faith requires him to act with an honest belief or purpose in the responses he provides. However, he is not required to speculate, and is charged only to reveal the existence of conditions within his actual knowledge.
 {¶ 46} John and Barbara Belluardo testified that they had not experienced the water problem in the basement of the house of which the Decaesteckers now complain when the Belluardos owned the property. John Belluardo did not deny knowledge of the leak in their common water line that occurred on his neighbor's property in 2000, but he insisted that, to his knowledge, the leak was fully repaired in 2001. Neither did he deny knowing that the water meter installed at the McEwan Road connection could reveal the existence of further leaks. He testified, however, that to his knowledge and since it was installed the meter had revealed no other leaks, and that to his knowledge no other water line leaks occurred while he owned the property.
 {¶ 47} John Belluardo also acknowledged receipt of the correspondence from the Montgomery County Department of Sanitary Engineering requiring repair of the leak that occurred in 2000, and alerting him to his responsibility to *Page 18 
install and pay for a new private line connected to a new public water main on Hidden Ridge Lane should the Department decide in the future to install such a new public water main. It is undisputed that no such new public water main has been ordered or installed, and that the property continues to be served by the existing line to the McEwen Road connection.
 {¶ 48} James Decaestecker testified, without objection, that plumbers had opined that the hydrostatic pressure causing water to enter his basement when moderate to heavy rainfall occurs is caused by a leak or leaks in the existing water line. He also testified that since he purchased the property, one such leak had been repaired by bypassing it. However, nothing in Decaestecker's evidence demonstrates that those conditions existed when the Belluardos owned the property.
 {¶ 49} Question A) of the Residential Property Disclosure Form asked whether the "owner knows of any current leaks, backups or other material problems with the water supply system or quality of water." The Belluardos signed the form and provided it to the Decaesteckers on May 7, 2002. On this record, the leak that occurred in 2000 was repaired in 2001. Therefore, that leak was not "current," and reasonable minds could not find that the Belluardos breached their duty of good faith when they failed to describe the 2000 leak in their *Page 19 
response to the questions asked, even though the existence of the prior leak was clearly within their actual knowledge. Neither could reasonable minds find that the Belluardos were required to reveal that the water meter had been installed at the McEwen Road connection in 2001 to detect further leaks, absent any evidence that the Belluardos had actual knowledge that the meter had functioned to reveal further leaks.
 {¶ 50} The Decaesteckers also rely on the notice given to the Belluardos in 2000 that the owner of the property would be responsible to pay for a connection to any new water main installed on Hidden Ridge Lane. However, no such new water main has been ordered or installed. Reasonable minds could not find that the possibility was a "material problem with the water supply system" the Belluardos were required to reveal.
 {¶ 51} Question J) asks about any "notice of building or housing code violations currently affecting the use of the property." On this record, the only such violation related to the leak that occurred in 2000, for which a variance was granted for its repair in 2001. It is unclear whether the variance applied to repair of the leak or continued use of the private line that connects to the water main at McEwen Road. However, and in either event, the variance avoids a current code violation. Reasonable minds could not find that the *Page 20 
Belluardos breached their duty of good faith when they made no response to the question in 2002.
 {¶ 52} Finally, question L) asks the seller to state his knowledge of any "other known material defects currently in or on the property." In this context, a "defect" is an imperfection, but its measure is not a lack of some superior quality. Rather, just as "to perfect" means to complete in design or function, a defect is a condition which renders some element of the property incomplete in its design or function and thus unable to properly perform its intended purpose. On this record, and with respect to the water supply to the property, reasonable minds could not find that the Belluardos breached their duty of good faith when they left blank the space in which to answer that question.
 {¶ 53} It may be, as James Decaestecker testified, that the hydrostatic pressure that allegedly causes water to enter the basement of his house when a moderate or heavy rainfall occurs results from a leak or leaks in the water line on the property. However, there is no evidence that such leaks existed when the Belluardos owned the property, much less that the Belluardos had actual knowledge of such leaks. The duty of disclosure imposed by R.C. 5302.30 is limited to matters within the seller's actual knowledge, and a purchaser's proof *Page 21 
of that actual knowledge, by a preponderance of the evidence, is necessary in order for the purchaser to prevail on a claim of fraud arising from the seller's alleged breach of his duty. On this record, the Decaesteckers cannot satisfy their burden of proof. Therefore, the Belluardos are entitled to summary judgment on their motion.
 {¶ 54} The assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. And BROGAN, J., concur.
[1] This sentence is incomplete in the original. *Page 1