[Cite as *Wilfong v. Petrone*, 2013-Ohio-2434.]

STATE OF OHIO      )           IN THE COURT OF APPEALS
              )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

ROBERT WILFONG, et al.           C.A. No.     26317

     Appellants

     v.                        APPEAL FROM JUDGMENT
                                ENTERED IN THE
ROBERT PETRONE, et al.          COURT OF COMMON PLEAS
                                COUNTY OF SUMMIT, OHIO
     Appellees              CASE No.    CV 2011-06-3237

DECISION AND JOURNAL ENTRY

Dated: June 12, 2013

CARR, Judge.

{¶1}    Appellants, Robert and Lori Wilfong, appeal the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of appellees, Robert and Kathleen Petrone. This Court affirms.

I.

{¶2}    On June 14, 2011, Robert and Lori Wilfong filed a complaint against Robert and Kathleen Petrone for breach of contract and fraud, seeking rescission of the contract, as well as compensatory and punitive damages. On August 8, 2011, the Petrones filed their answer and a counterclaim for attorney fees based on frivolous conduct.

{¶3}    On October 11, 2011, the Wilfongs filed a motion to amend the complaint. The trial court granted the motion on October 14, 2011. Before the first amended complaint was filed, the Petrones filed a motion for summary judgment on November 18, 2011. After the Petrones filed their motion for summary judgment, the Wilfongs filed a second motion for leave

to file their first amended complaint and to add an additional party defendant. On December 1, 2011, the trial court granted the motion. That same day, the Wilfongs filed their first amended complaint, naming the Kathleen Petrone Trust as an additional defendant. On January 10, 2012, the trial court issued an order suspending the Petrones' obligation to respond to the amended complaint until summary judgment was decided. The parties also stipulated that any summary judgment ruling would apply to the Kathleen Petrone Trust.

{¶4} With a motion for summary judgment pending, the Wilfongs filed a brief in opposition to the motion on December 22, 2011. The Petrones filed a reply brief in support of the motion for summary judgment on January 13, 2012. On February 2, 2012, the trial court issued a judgment entry granting summary judgment in favor of the Petrones on the claims in the complaint, and dismissing the Petrones' counterclaim for failure to state a claim.

{¶5} The Wilfongs filed a notice of appeal on February 28, 2012. On appeal, they raise one assignment of error.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN CONCLUDING THAT DEFENDANT-APPELLEES WERE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL COUNTS ALLEGED IN PLAINTIFF-APPELLANTS' COMPLAINT.

{¶6} In their sole assignment of error, the Wilfongs argue that the trial court erred in concluding that the Petrones were entitled to judgment as a matter of law. This Court disagrees.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and

resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶8} Pursuant to Civ.R. 56(C), summary judgment is proper if:

No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ.R. 56(C). *Id.* Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated at trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶10} In this case, the Wilfongs have asserted causes of action for misrepresentation, fraud for inaccurate and incomplete disclosures, and rescission of a real estate contract. The doctrine of caveat emptor precludes a purchaser from recovering for a structural defect in real estate if "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3)

there is no fraud on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176, syllabus (1988). The Wilfongs contend that the doctrine does not apply in this case because the Petrones fraudulently misrepresented the extent to which the lake house had issues with water intrusion problems in the basement.

{¶11} "The elements of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Stark County Bd. of Comm'rs*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus. Regarding fraudulent concealment or nondisclosure, the Supreme Court of Ohio has held that "a vendor has a duty to disclose material facts which are latent, not readily observable or discoverable through a purchaser's reasonable inspection." *Binns*, 35 Ohio St.3d at 178. "Fraudulent concealment exists where a vendor fails to disclose sources of peril of which he is aware, if such a source is not discoverable by the vendee." *Bryk v. Berry*, 9th Dist. No. 07CA0045, 2008-Ohio-2389, ¶ 7. "The nature of the defect and the ability of the parties to determine through a reasonable inspection that a defect exists are key to determining whether or not the defect is latent." *Id.* A patent defect will not give rise to a claim of fraud against a seller. *Kramer v. Raterman*, 161 Ohio App.3d 363, 2005-Ohio-2742, ¶ 13 (1st.Dist.).

{¶12} At the center of this dispute is a lake house built on Silver Valley Lake in Munroe Falls, Ohio. A portion of the lake house overhangs the lake itself and rests on stilts. Silver Valley Lake is in the immediate vicinity of the Cuyahoga River, and there is a retention pond

known as Damon Lake that is located between the Cuyahoga River and Silver Valley Lake. The lake house is located at a lower elevation point than any other house in the neighborhood, and it sits in a federally designated flood plain. The lake house was built in 1998, and the Wilfongs purchased the house from the Petrones in 2005.

{¶13} In support of their motion for summary judgment, the Petrones relied heavily on the deposition of Robert Wilfong. Wilfong owns a company that installs manufactured homes, and he became a licensed real estate agent in 2009. He first learned of the lake house when his wife, Lori, found it on a real estate website. The Wilfongs brought the property to the attention of their real estate agent, who coincidentally had recently attended a broker's open house at the lake house. In the summer of 2005, the Wilfongs made a point to drive by the lake house without their real estate agent, and they noticed Kathleen Petrone in the front yard. The Wilfongs stopped to introduce themselves, and Ms. Petrone proceeded to give them a tour of the lake house that lasted between fifteen to twenty minutes. It was during this first visit that Wilfong noticed that the house was built on stilts over the surface of the lake. Wilfong had a personal preference to be by the water, and he appreciated the beauty and "unique construction" of the lake house. Robert Wilfong averred that after viewing the lake house, he and he wife contacted their real estate agent and "told him we had viewed [the] home, we loved the home, and more than likely we would like to make an offer on the home."

{¶14} The Wilfongs proceeded to make an offer on the lake house through a real estate company. While Wilfong could not remember if he and his wife viewed the house again prior to making an offer, he stated in his deposition that he went through the house three or four times before the sale closed. Wilfong admitted that during his first visit to the lake house, he noticed the furnace hung horizontally from the ceiling in the basement. When asked if in his experience

it was common for furnaces to hang from the ceiling, Wilfong acknowledged that it was not common practice. Wilfong admitted that he never had a conversation with his real estate agent or the Petrones as to why the furnace was hanging from the ceiling of the basement of the lake house.

{¶15} During their second visit to the lake house, the Wilfongs were accompanied by their real estate agent. At that time, Wilfong observed what appeared to be drains in the basement. Wilfong learned during the second visit, however, that what appeared to be drains were merely "holes in the concrete that just go into the fill material, they're not exhausted anywhere." Wilfong also learned that there was no sump pump in the basement, and that the sewer outlet was located on the front wall, instead of the wall nearest to the lake.

{¶16} The Wilfongs made two additional visits to the lake house in August 2005. At that point the Wilfongs had made an offer on the property, and they wanted to show the lake house to certain family and friends. While the Wilfongs did not enter the basement on the third visit, they did go into the basement on their fourth visit because they were accompanied by a friend who had a background in construction.[1] Robert Wilfong indicated that he could not remember his friend making any comments about the furnace hanging from the ceiling, or the drainage system.

{¶17} Wilfong admitted in his deposition that while he had an opportunity to observe the culvert piping that runs from Damon Lake to Silver Valley Lake, he neither took time to observe the piping system, nor did he take note of the proximity of Silver Valley Lake to the

---

[1] Lori Wilfong was also deposed in this matter. She stated that her testimony would be identical to that of her husband, with two minor exceptions. The first was that their friend with a background in construction visited the house prior to the point in time that they made an offer. The second difference dealt with which family members visited the house prior to closing.

Cuyahoga River. Wilfong further admitted that he did not do any research regarding flooding issues in Silver Valley Lake. When asked why he did not research this issue, Wilfong stated, "I cannot answer that. I didn't assume there was a problem." When Wilfong was asked if the flooding of the Cuyahoga River caused the lake level to rise, Wilfong responded, "Yes, that's the reason we are here." With respect to issues surrounding the lake, Wilfong stated in his deposition that one of his neighbors spoke with someone who lived in a nearby condominium that said Robert Petrone had attempted to build a dam to prevent overflow from the Cuyahoga River into the lake, but "the city put a stop to it." Wilfong further stated that after purchasing the lake house he heard from one of his neighbors that Petrone had been involved in an effort to pump out the bottom of the lake.

{¶18} The Wilfongs closed on the purchase of the home on October 27, 2005. The Wilfongs did not have any issues with water intrusion for the first year they lived in the lake house. At times, Wilfong observed variations in the water level of the lake. Wilfong testified the variations are caused by "water runoff from the streets and the water table. The lake is very deep, so it's affected by the water table." When asked about the elevation level of his lake house compared to the other homes in the neighborhood, Wilfong admitted, "Mine is the lowest." About a year after closing, during the winter of 2006-2007, melting snow and winter rain caused the lake level to rise, and the Wilfongs experienced six to eight inches of water intrusion in the basement. The water from the lake entered through the basement walls and remained for approximately two weeks. Wilfong testified, "if the lake level is that high, it's [going to] be in there."

{¶19} Wilfong stated in his deposition that Tom Bell, the real estate agent who represented him during the purchase of the lake house, was not familiar with the neighborhood,

nor did he recommend that Wilfong use an agent who had a more intimate knowledge of the area. After Wilfong made an offer on the property, his real estate agent advised him to have a general home inspection. Wilfong also made a point to have a structural engineer do an inspection due to the unique design of the lake house, but he did not have the home inspected by a civil engineer. Wilfong indicated that he did not obtain an elevation certificate for the residence prior to closing, and he did not consider having a storm water runoff analysis done on the property.

{¶20} Wilfong stated in his deposition that he did review the residential property disclosure form with his real estate agent. Wilfong acknowledged that both he and his wife signed the disclosure form on August 25, 2005. Under the section marked, "FLOOD PLAIN/LAKE ERIE COASTAL EROSION AREA," a box is checked indicating that the property was, in fact, located in a flood plain, and that it was "unknown" whether the property was a coastal erosion area. The Petrones further disclosed on the form that "In the flood of 2002 we had sewer backup, and we had a check valve installed and [the] basement pumped out." Under the section marked, "Water Intrusion," the Petrones stated, "We had the 100 year flood in 2002 and again in 2003. The lake pipe has been replaced (see surveyor report)." Under the section marked "DRAINAGE," with respect to any "repairs" or "other attempts to control flooding," the Petrones again noted that the drain pipe for the lake had to be repaired. Wilfong admitted in his deposition, as well as in his answers to interrogatories, that he and his wife "accepted the possibility of water intrusion." When asked to elaborate, Wilfong stated, "we understood, you know, maybe the severest of conditions, being on the lake there, obviously with the basement with drains in it, that water could get in there."

{¶21} When asked whether he went over the residential property disclosure form with his real estate agent, Wilfong responded, "We initialed it, so I'm assuming yes." Wilfong stated that he did not remember discussing the flood plain issue with his real estate agent, but he admitted that he did not request that his real estate agent point out potential issues that arose out of the disclosure form. Wilfong further stated in his deposition that he decided not to purchase flood insurance when he bought the property because he assumed he "wouldn't need it." When asked if he made this decision despite having knowledge that the home was located in a flood plain, Wilfong responded in the affirmative.

{¶22} The home inspection report commissioned by Wilfong in September 2005 was also attached as an exhibit to the Petrones' motion for summary judgment. In his deposition, Wilfong admitted that the home inspector he used was not a licensed inspector. The inspection report contains a provision stating that "the Inspector is liable only up to the cost of the inspection." In regard to "basement drainage," the inspection report states there was no "indication of moisture" in the basement at the time the inspection was performed. The inspection report also indicates that there was no sump pump in the basement, and that there were "floor drains" in the basement. Wilfong admitted during his deposition that the furnace in the basement was a brand name furnace that had been in place for five to seven years, and that the home inspector did not make any comments about the fact that the furnace was hanging from the ceiling. Wilfong stated that while the report contains a provision advising the customer to "read the entire report," he did not read the entire report and instead read only the inspectors' comments. Wilfong stated that after discussing the lake house with the home inspector, he decided against having a structural engineer inspect the home. When asked if a structural

engineer would have analyzed the effect of water pressure against the basement walls caused by the lake rising, Wilfong responded, "There was no evidence of damage to the [] walls from that."

{¶23} The real estate purchase agreement between the Petrones and the Wilfongs was attached to the motion for summary judgment, and Robert Wilfong discussed the contract during his deposition. Wilfong acknowledged the agreement contains a clause stating that the "Agreement is contingent upon house passing inspection to buyer's satisfaction." The purchase agreement further contains an "As Is" clause, which states, "Buyer agrees and acknowledges that the property is being conveyed 'AS IS' and that Seller has not made any representations or warranties, either express or implied, regarding the property, (except for the Ohio Residential Property Disclosure Form, if applicable), including, but not limited to, the condition of the * * * Basements (structural or water seepage)[.]" An addendum to the purchase agreement states, "Buyers have inspected and accept the house in 'As Is' condition."

{¶24} Wilfong stated in his deposition that he first experienced issues with water intrusion in the basement in January 2007, and that he had further water intrusion issues the following winters, including "flooding events" in 2008 and 2011. Wilfong indicated that the "flooding events" occurred when the flooding of the Cuyahoga River caused the level of Silver Valley Lake to rise, which caused over five feet of water to accumulate in the basement. Wilfong admitted that by flooding, he was referring to "the Cuyahoga River cresting its banks[.]" In 2008 and 2011, this "flooding" lasted for between seven to fourteen days. Wilfong stated that he had never done any formal research with respect to the water tables in the area. Wilfong stated that he obtained an elevation certificate within a year prior to filing his lawsuit, but he had not obtained an elevation certificate prior to closing on the purchase of the lake house.

{¶25} While the Petrones attached a number of exhibits to their motion, including photographs, the purchase agreement, the home inspection agreement, and the residential property disclosure form, the Wilfongs appended the affidavit of Robert Wilfong to their response to the motion for summary judgment. In his affidavit, Wilfong admitted that he had a conversation with Ms. Petrone about the lake levels. Wilfong averred that while Ms. Petrone acknowledged that the lake level did vary from time to time, she did not advise Wilfong that "the lake level would rise high enough to flood out the basement[.]" Wilfong averred that he "relied heavily" on the disclosure form, and complained the disclosure statement did not convey that the basement of the house "flooded out," nor did it explain that it was necessary to hang the furnace from the ceiling due to the flooding. Wilfong further averred that the disclosure statement did not put a potential buyer on notice that the Petrones were involved with efforts to control the lake level, including "attempt[ing] to pump out the lake to lower the lake level * * *," and "[trying] to build a damn along the river to keep water from flowing into the lake."

{¶26} This Court's review of the summary judgment materials submitted by the parties reveals that the trial court properly concluded that there were no issues of material fact, and that the Petrones were entitled to judgment as a matter of law. There is no dispute that at the time the Wilfongs purchased the lake house, they were aware that it sat in a federally designated flood plain, and that the lake house extended out over the lake and rested on stilts. The Wilfongs were never impeded from examining the property, and they visited the lake house four times prior to closing. The Petrones admitted in their property disclosure form that they had to have water pumped out of the basement, and that they experienced the 100 year flood in both 2002 and again in 2003. Nevertheless, while Robert Wilfong acknowledged in his deposition that he and his wife expected some water intrusion in the basement, he admitted that he made no effort to

research the water levels in the area, nor did he research how the presence of the Cuyahoga River might impact the water levels of Silver Valley Lake. In regard to the basement itself, there is no dispute that the Wilfongs were aware at the time of the purchase that there was no sump pump in the basement, and that what appeared to be drains in the floor of the basement were actually just holes that went down into fill material. The Wilfongs were also aware that the furnace in the basement was suspended from the ceiling in an unconventional fashion. Under these circumstances where the Wilfongs had access to the property and there is no evidence that the Petrones misrepresented the condition of the lake house, the trial court did not err in concluding that the Petrones were entitled to judgment as a matter of law.

{¶27} The Wilfongs' assignment of error is overruled.

### CROSS-ASSIGNMENT OF ERROR

THE TRIAL COURT SHOULD HAVE GRANTED SUMMARY JUDGMENT
ON THE ADDITIONAL GROUND THAT THE STATUTE OF LIMITATIONS
BARS THE WILFONGS' CLAIM

{¶28} In their cross-assignment of error, the Petrones assert that the Wilfongs' fraud claim was barred by the statute of limitations. As our resolution of the Wilfongs' assignment of error is dispositive of this appeal, this Court declines to address the Petrones' cross-assignment of error as it is rendered moot. *See* App.R. 12(A)(1)(c).

III.

{¶29} The Wilfongs' assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

_____
DONNA J. CARR
FOR THE COURT

MOORE, P. J.
CONCURS.

BELFANCE, J.
DISSENTING.

{¶30} I respectfully dissent. The trial court determined that Mr. and Mrs. Petrone and The Petrone Trust (collectively, "Defendants") were entitled to summary judgment because Mr. and Mrs. Wilfong's claims were barred by caveat emptor and by the "As Is" clause in the parties' purchase agreement. However, I believe summary judgment was inappropriate because the Petrones failed to move for summary judgment based upon the Wilfong's amended complaint

and failed to meet their *Dresher* burden with respect to the absence of fraud on the part of the vendor.

{¶31} "The doctrine of caveat emptor precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176 (1988), syllabus.

> The elements of fraud are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69 (1986), paragraph two of the syllabus.

{¶32} Similarly, caveat emptor as reflected in "As Is" clauses does not apply if the seller engaged in fraudulent misrepresentation. *See Loya v. Howard Hanna Smyth, Cramer Co.*, 9th Dist. No. 24378, 2009-Ohio-448, ¶ 12-13. Furthermore, the "As Is" clause in the purchase agreement in this case expressly provides that "Buyer agrees and acknowledges that the property is being conveyed 'AS IS' and that Seller has not made any representations or warranties, either express or implied, regarding the property, (*except for the Ohio Residential Property Disclosure Form, if applicable*) * * *." (Emphasis added.). In other words, the "As Is" clause is inapplicable if the Property Disclosure Form contains misrepresentations.

{¶33} Mr. and Mrs. Wilfong initially made a general allegation of fraud in their complaint. The Petrones moved for summary judgment, arguing in part that the Wilfongs had failed to allege fraud with particularity. The Wilfongs with leave of court, moved to amend their

complaint to add The Petrone Trust as a defendant and to allege fraud with greater particularity. However, the Petrones never supplemented their original summary judgment motion or made a subsequent motion for summary judgment.[2] The trial court granted the Petrones' motion for summary judgment and remarked that "Plaintiffs alleged generalized fraud; their allegations were not stated with particularity." It also determined that the Wilfongs' allegations of fraud were "contradicted by their own admissions that they received no active or affirmative misrepresentations."

{¶34} However, the trial court appears to have been looking at the original complaint because, in the amended complaint, the Wilfongs specifically alleged that the Petrones had falsely answered Section J of the Property Disclosure Form. Section J asks, "Do you know of any current flooding, drainage, settling, or grading problems affecting the property?" The form contains check boxes for "Yes" and "No." Section J continues: "If 'Yes', please describe[.]" The Petrones checked "No" and left the "please describe[]" area blank. In other words, the Wilfongs' complaint contains an allegation that the Petrones failed to disclose current flooding separate and apart from the more unusual 100-year flood incidents that had occurred several years prior to the sale. The allegation is fleshed out further in Mr. Wilfong's deposition testimony in which he stated that, after the sale, several neighbors told him that there had been severe flooding just two months prior to the completion of the disclosure statement.[3] Such

---

[2] The parties did stipulate that they would treat the first summary judgment motion as being on behalf of The Petrone Trust as well.

[3] Mr. Wilfong's statements on this issue are most likely hearsay. However, this is not relevant to whether the Petrones met their initial *Dresher* burden. Had they done so, the Wilfongs would have been required to submit appropriate responsive summary judgment materials such as affidavits from their neighbors demonstrating a dispute of material fact. I mention Mr. Wilfongs deposition statements solely to point out that the Wilfongs did not concede this point "by their own admissions[.]"

evidence would suggest that the Petrones did not truthfully disclose the nature and extent of the flooding of the property. The property disclosure form also asks the owners to disclose what repairs had been done following the flooding incidents. The Petrones wrote that "[t]he lake pipe has been repaired" and that they installed a valve in the basement to prevent further sewer backups. When read in concert with their answer that the property had no "current flooding[]" issues, the Property Disclosure Form could reasonably be read to mean that those repairs had fixed any past flooding problems. There is no doubt that a truthful disclosure of recent, severe and ongoing flooding was material to the sale of the house.

{¶35} In moving for summary judgment, the Petrones did not put forth any evidence that Section J of the property disclosure form was answered truthfully or any evidence to negate the other elements of fraud. *See Burr*, 63 Ohio St.3d at paragraph two of the syllabus. In addition, the trial court's assertion that the Wilfongs had conceded that they "received no active or affirmative misrepresentations[]" is unsupported by the summary judgment materials. In their answers to the Petrones' requests for admissions, the Wilfongs assert that they would not have bought the home if Section J had been answered truthfully. During Mr. Wilfong's deposition, he indicates that the Petrones falsely answered the question because the basement had flooded in April 2005, two months before the Petrones filled out the property disclosure form. At no point do the Wilfongs "by their own admissions" concede that Section J was answered truthfully.

{¶36} Accordingly, I would reverse the judgment because it is apparent that the trial court did not consider the amended complaint when it granted summary judgment. In addition, based upon the record before this Court, I would conclude that the Defendants failed to demonstrate that there was an absence of a dispute of fact that they had not engaged in fraud. *See id*. Therefore, they failed to demonstrate that were entitled to protection under caveat

emptor, *see Layman*, 35 Ohio St.3d at syllabus, or under the "As Is" clause of the purchase agreement. I would not address the other arguments advanced by the Petrones in support of their motion for summary judgment because the trial court did not address them in the first instance. *Neura v. Goodwill Industries*, 9th Dist. No. 11CA0052-M, 2012-Ohio-2351, ¶ 19. Accordingly, I would reverse the judgment of the Summit County Court of Common Pleas and remand for further proceedings.

APPEARANCES:

THOMAS J. SICURO, Attorney at Law, for Appellants.

OLIVER KOO, Attorney at Law, for Appellants.

THOMAS R. HOULIHAN, Attorney at Law, for Appellees.