[Cite as *Diemert v. Binstock*, 2019-Ohio-3368.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| MAUREEN DIEMERT, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 107893 |
| v. | : | |
| LILLY BINSTOCK, | : | |
| Defendant-Appellee. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 22, 2019

Civil Appeal from the Lyndhurst Municipal Court
Case No. 17CVF01253

***Appearances:***

Diemert & Associates Co., L.P.A., Joseph W. Diemert, and
Shannon D. Parker, *for appellant.*

Harvey Kugelman Co., L.P.A., and Harvey Kugelman, *for appellee.*

LARRY A. JONES, SR., J.:

{¶ 1} Plaintiff-appellant Maureen Diemert ("Diemert") appeals the trial court's dismissal of her claims against defendant-appellee Lilly Binstock ("Binstock"). Finding no merit to the appeal, we affirm.

{¶ 2} In 2017, Diemert filed a complaint against Binstock in Lyndhurst Municipal Court alleging fraudulent misrepresentations stemming from a Mayfield Heights house she purchased in 2015 from then 88-year old Binstock.[1] Diemert alleged that shortly after moving into the house, she began experiencing water problems and had to spend $22,000 to remedy the damage to her home.

{¶ 3} The matter proceeded to a bench trial in front of a magistrate.

{¶ 4} Binstock owned the subject property for a number of years, but was not the original owner. In 1992 and 1993, Binstock had waterproofing work done on the house. Diemert purchased the house in November 2015 and testified that within three or four days of moving into the house, water came up through the drains in the basement. Diemert hired a plumber to snake the drain, but that did not fix the problem. Diemert hired ABV Contractors to repair drain tile and down spouts, waterproof the basement, and install a sump pump. She also hired M&G Group to waterproof the foundation under her patio.

{¶ 5} Diemert testified that when she purchased the house, the purchase agreement stated that the house was being sold "as is." Binstock provided a Residential Property Disclosure Form. In Section B of the disclosure statement, Binstock checked that she did not know of any current or previous leaks or backups with the sewer system.

---

[1]Binstock passed away in November 2018, while this appeal was pending.

{¶ 6} Tom Mannarino, owner of M&G Group, testified that his company removed three to four inches of side patio, waterproofed the side of the property, and installed new drain tile. He was not able to tell when the water problem started and did not know whether Binstock knew of the problem prior to selling her house to Diemert.

{¶ 7} Tom Jamieson ("Jamieson"), director of the Mayfield Heights building department, testified that there was an improper tie-in of the sewer line to the sanitary line at the house. According to Jamieson, the city never issued a permit to allow the tie-in of the sewer to the sanitary line and the city would not issue such a permit because it would violate city building code. Jamieson testified that he did not know when the sewer line was connected to the sanitary line or how it was connected. He also did not know whether the improper tie-in happened during the work Binstock had done in the 1990s. He conceded that the tie-in could date back to the original construction of the house.

{¶ 8} Valerio Frabotta, vice president of ABV Contractors, also testified that the water problems at the house were the result of an improper tie-in of the sanitary and sewer lines. His company performed excavation and waterproofing work to correct the problem. He admitted he had never met Binstock and did not know what she knew about the water problem in the basement.

{¶ 9} Mayfield Township Building Inspector Michael Hlad ("Hlad") testified that the house's sanitary line was tied into the sewer line and that such a connection was illegal, explaining that the sanitary line is not designed to handle the

volume of water that flows through the sewer line. As a result, water will back up into the basement. Hlad testified that he did not know when the improper tie-in happened and the water damage in the basement was not recent. He testified that the improper tie-in could be more than 25 years old.

{¶ 10} Howard Sonenstein testified as an expert relative to building codes and waterproofing. He testified that the basement had been partially waterproofed in 1992 and 1993, but the invoices related to the waterproofing did not indicate that "trenching" was done at that time. He testified that he observed water marks in the basement but did not know what condition the property was in when Diemert purchased the house or when the watermarks first appeared in the basement. He testified he had never met Binstock and did not know what she knew about the water problems or improper sewer tie-in.

{¶ 11} The disclosure statement contained in the purchase agreement advised a prospective buyer to obtain a professional inspection of the property. Diemert testified that she did not want to spend the money to have the house inspected. She testified that she walked through the house with a friend who was in the construction business. This friend, Larry Otino ("Otino"), told Diemert that there had been a water problem in the basement that had been taken care of in the past, as evidenced by "trench" lines on the basement walls.

{¶ 12} Diemert testified that she relied on the disclosure statement when purchasing the house. She testified that she never met Binstock, did not know who

signed the disclosure statement, and did not know what Binstock knew about the water damage to the property.

{¶ 13} Binstock moved for a directed verdict. The magistrate overseeing the hearing ruled that Diemert failed to prove that Binstock knew about the cause of the water backup, and, therefore, Diemert failed to prove that Binstock knowingly concealed the tie-in or the condition of the basement with the intent to mislead Diemert. The magistrate recommended the trial court dismiss the complaint.

{¶ 14} Diemert filed objections to the magistrate's decision, arguing, in part, that the magistrate erred in recommending dismissal of the complaint pursuant to a directed verdict. The trial court overruled the objections, finding that even if the magistrate should have dismissed the case pursuant to Civ.R. 41(B)(2), Diemert failed to produce sufficient evidence to establish that Binstock had any direct or indirect knowledge about the tie-in. The court also found that Diemert presented no evidence to establish that the sewer and storm lines were combined while Binstock owned the house. The trial court dismissed the complaint with prejudice.

{¶ 15} Diemert appealed and raises one assignment of error for our review:

I. The trial court's dismissal of the plaintiff's claim was against the manifest weight of the evidence.

{¶ 16} As an initial matter, we note that in a bench trial, a motion for judgment by a defendant at the close of plaintiff's case is one for a dismissal, pursuant to Civ.R. 41(B)(2) and not for a directed verdict, pursuant to Civ.R. 50(A)(4). *Johnson v. Tansky Sawmill Toyota*, 95 Ohio App.3d 164, 167, 642 N.E.2d

9 (10th Dist.1994).  Thus, the correct procedure in this case was to dismiss the case pursuant to Civ.R. 41(B)(2).  "A dismissal pursuant to Civ.R. 41(B)(2) will not be set aside unless it is incorrect as a matter of law or is against the manifest weight of the evidence."  *Id.*

{¶ 17} When reviewing a judgment under a civil manifest-weight-of-the-evidence standard, "a court has an obligation to presume that the findings of the trier of fact are correct."  *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273 (1984).  "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), paragraph one of the syllabus.

{¶ 18} To prevail on a claim for fraudulent misrepresentation, a plaintiff must prove by a preponderance of the evidence that (1) a representation or, when a duty to disclose exists, concealment of a fact, (2) material to the transaction at hand, (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent to mislead another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.  *See Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69,  491 N.E.2d 1101 (1986), paragraph two of the syllabus.

{¶ 19} R.C. 5302.30 charges the director of commerce to prescribe a disclosure form that sellers of residential real property must provide to purchasers. The form is "designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred * * * and any material defects in the property that are within the actual knowledge of the transferor." R.C. 5302.30(D). A duty of good faith is imposed on the seller, R.C. 5302.30(E)(1), though liability for nondisclosure does not apply to matters "not within the transferor's actual knowledge." R.C. 5302.30(F)(1).

{¶ 20} Importantly, a seller's response or nonresponse to the questions posed by the residential property disclosure form does not warrant the good condition of the property. *Schroeder v. Henness*, 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 46. Rather, they constitute the owner's representations concerning his or her actual knowledge of the condition of the property in respect to the particulars specified. *Id.*

{¶ 21} A variance between the owner's representations and the truth and fact of the matters concerned may be a basis for a claim of fraud, and the seller's duty of good faith requires him or her to act with an honest belief or purpose in the responses he or she provides. *Decaestecker v. Belluardo*, 2d Dist. Montgomery No. 22218, 2008-Ohio-2077, ¶ 45. However, the owner is not required to speculate, and is charged only to reveal the existence of conditions within his or her actual knowledge. *Id.*

{¶ 22} If a seller fails to disclose a material fact on a residential property disclosure form with the intention of misleading the buyer, and the buyer relies on the form, the seller is liable for any resulting injury. *Wallington v. Hageman*, 8th Dist. Cuyahoga No. 94763, 2010-Ohio-6181, ¶ 18, citing *Pedone v. Demarchi*, 8th Dist. Cuyahoga No. 88667, 2007-Ohio-6809, ¶ 31. In other words, the "as is" clause is inapplicable if the property disclosure form contains misrepresentations. *Wilfong v. Petrone*, 9th Dist. Summit No. 26317, 2013-Ohio-2434, ¶ 32. But when a buyer has had the opportunity to inspect the property, the buyer "is charged with knowledge of the conditions that a reasonable inspection would have disclosed." *Wallington* at *id.*, citing *Pedone* at ¶ 33.

{¶ 23} Our review of the record reflects that Diemert did not present any evidence that Binstock, knew, or should have known, about the illegal sewer tie-in or water problems in the basement. Diemert presented no evidence that Binstock actively concealed a known defect, *see Felty v. Kwitkowski*, 8th Dist. Cuyahoga No. 68530, 1995 Ohio App. LEXIS 4834 (Nov. 2, 1995), or evidence that Binstock made positive, fraudulent representations as to the condition of the property, *see Lance v. Bowe*, 98 Ohio App.3d 202, 648 N.E.2d 60 (9th Dist.1994). Binstock stated in the property disclosure statement that she had no knowledge of any water problems in the basement; Diemert was unable to rebut that claim.

{¶ 24} The house was sold in an "as is" condition. Diemert, as the buyer, had the opportunity to have a professional inspect the property, but chose not to do so,

even though a friend, Otino, noticed the trench marks in the basement that indicated a prior water problem.

{¶ 25} Unlike a determination of negligence, evidence or expert opinions that a party "should have known" of the condition in a basement do not create an issue of fact as to fraud because a finding of fraud requires proof that a defendant had actual knowledge of the alleged defect and proof that he or she purposely misrepresented or concealed it. *Yahner v. Kerlin*, 8th Dist. Cuyahoga No. 82447, 2003-Ohio-3967, ¶ 30. No such evidence was presented in this case.

{¶ 26} Therefore, the trial court's judgment was not against the manifest weight of the evidence. The sole assignment of error is overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, A.J., and
RAYMOND C. HEADEN, J., CONCUR