[Cite as *Petroskey v. Martin*, 2018-Ohio-445.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

DAVID PETROSKEY, et al.

    Appellants

    v.

THOMAS MARTIN, et al.

    Appellees

C.A. No.    17CA011098

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    15CV186716

DECISION AND JOURNAL ENTRY

Dated: February 5, 2018

---

CALLAHAN, Judge.

{¶1}    David and Jasmine Petroskey appeal from a judgment of the Lorain County Common Pleas Court granting summary judgment to Thomas and Dee Martin. This Court affirms.

I.

{¶2}    In August 2013, David Petroskey, as buyer, and Dee Martin, as seller, entered into a purchase agreement for 5555 Laura Lane in Lorain ("the Home"). Jasmine Petroskey is David Petroskey's wife, and Dr. Thomas Martin is Dee Martin's husband. Prior to the sale, the Home had been titled solely in Dee Martin's name. The record does not reflect how the Petroskeys titled the Home.

{¶3}    In April 2013, Mrs. Martin, with the assistance of Dr. Martin, had completed an Ohio Residential Property Disclosure Form ("Disclosure Form"). The Disclosure Form asked, "Do you know of any previous or current water leakage, water accumulation, excess moisture or

other defects to the property, including but not limited to any area below grade, basement or crawl space?" Mrs. Martin checked the "No" box following this question. The Disclosure Form also asked, "Do you know of any previous or current leaks or other material problems with the roof or rain gutters? * * * If 'Yes,' please describe and indicate any repairs completed (but no longer than the past 5 years)." Mrs. Martin checked the "No" box on this question as well. In her deposition, Mrs. Martin testified that, at the time she completed the Disclosure Form, she "thought it was about seven years" since they had the roof replaced and that had been done for "cosmetic reasons."

{¶4} In September 2013, Mr. Petroskey had the home inspected. The inspection report noted various water issues and concerns about the roof. For instance, the crawl space had "[e]vidence of past or present water leakage" and "[e]levated moisture" at the time of the inspection. In addition, "wet areas [were] noted at [the] time of the inspection on the south[, and] the buyer mentioned that[,] when he [] was walking through the home[,] he noted wet areas on the north side of the crawlspace." (Emphasis deleted.) The inspector also noted that the property's grading was a "[f]lat [i]mproper soil slope towards [the] foundation."

{¶5} Further, the inspector found "[e]vidence of past water leakage" around the skylights and "[e]vidence of past or present water staining" on the ceilings in all bedrooms in the home, the family room, and the master bathroom. He found a "mold like substance [ ] in the main attic specifically near the lower north soffits" and that the "[s]heathing show[ed] evidence of past or present water stains." (Emphasis deleted.) The inspector observed "[e]vidence of repairs on the roof" and opined that "the roof may [] be less th[a]n 7 years old." He further observed that there was loose and damaged trim wood where it was in contact with the roof and damaged wood fascia "from past or present leaks."

{**¶6**}    The inspector recommended that Mr. Petroskey "[i]nquire with the seller regarding [the] history of [the roof] repairs and any potential warranties" and "inquire with the owner as to the scope of the repairs noted on the roof and flashing."  He also "recommend[ed] * * * increas[ed] ventilation of the roof."   (Emphasis deleted.)   Finally, the inspector stated multiple times in his report that "[a] qualified roofing contractor is recommended to evaluate and estimate repairs."

{**¶7**}    Following the inspection, Mr. Petroskey developed a list of items that concerned him.  That list included some, but not all, of the items identified by the inspector.  In October 2013, Mr. Petroskey and Mrs. Martin amended their purchase agreement.  The amendment removed the general home inspection contingency and reduced the sale price.  Mr. Petroskey testified that he went through the Home "[m]aybe half a dozen" times before finalizing the purchase.

{**¶8**}    In November 2013, the Petroskeys moved in to the Home.  At that time, they were provided a folder containing documents related to various improvements that the Martins had done to the Home.  Within that folder were invoices for roof work from June 2008.

{**¶9**}    According to the Petroskeys, they experienced "ice damming" on the roof, leaking skylights, and a leaking roof soon after moving in to the Home.  In addition, "the front yard did not drain properly and [ ] water entered the crawlspace and collected on the floor."

{**¶10**}  The Petroskeys sued alleging that Dr. and Mrs. Martin (1) "misrepresented that the roof did not have 'previous or current leaks or other material problems'" and (2) "misrepresented that there were no 'current or previous water leakage, water accumulation, excess moisture, or other defects in [] the property including but not limited to any area below grade, basement or crawl space.'"

{¶11} The Martins moved for summary judgment. The Petroskeys opposed the motion. The trial court granted summary judgment to the Martins finding that (1) the evidence did not "establish that the [Martins] incorrectly filled the form out knowing it was false or * * * 'with such utter disregard and recklessness as to whether it [was] true or false that knowledge may be inferred'" and (2) there was "no justifiable reliance by the [Petroskeys]." (Emphasis deleted.)

{¶12} The Petroskeys appeal, raising one assignment of error.

II.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED WHEN IT GRANTED SELLER'S MOTION FOR SUMMARY JUDG[]MENT BECAUSE IT FAILED TO VIEW THE EVIDENCE IN A LIGHT "MOST STRONGLY" FAVORABLE TO BUYER AND WEIGHED THE EVIDENCE.

{¶13} In their sole assignment of error, the Petroskeys argue, "The trial court weighed the evidence before it [to] conclude[] that 'the testimony before the court fails to establish that the [Martins] incorrectly filled the form out knowing it was false or * * * 'with such utter disregard and recklessness as to whether it [was] true or false that knowledge may be inferred.'"

{¶14} Initially, this Court notes that the Petroskeys concede that the inspection report "may have placed" them on notice regarding the crawl space. The Petroskeys then set forth their argument based on the roof. This Court will likewise limit its analysis to the roof.

{¶15} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court uses the same standard that the trial court applies under Civ.R. 56(C), viewing the evidence in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *See Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983). Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶16}  The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). Specifically, the moving party must support the motion by pointing to some evidence of the type listed in Civ.R. 56(C). *Id.* at 292-293. If the moving party satisfies this burden, then the non-moving party has the reciprocal burden to demonstrate a genuine issue for trial remains. *Id.* at 293. The non-moving party may not rest upon the mere allegations or denials in their pleadings, but must point to or submit evidence of the type specified in Civ.R. 56(C). *Id.* at 293; Civ.R. 56(E).

{¶17}  While Ohio has a residential property disclosure statute, common law claims and defenses, including fraud and caveat emptor, still apply. R.C. 5302.30(J); *Hearty v. First Merit Bank, N.A.*, 9th Dist. Summit No. 19273, 1999 Ohio App. LEXIS 5544, *7 (Nov. 24, 1999). "Under the defense of caveat emptor, a seller will prevail against the injured buyer where (1) the defect to the premises was open to observation or [discoverable] upon reasonable inspection, (2) the buyer had unimpeded access to inspect the premises and (3) there was no fraud." *Id.* at *7-8, citing *Layman v. Binns*, 35 Ohio St.3d 176 (1988), syllabus. *Accord Ponder v. Culp*, 9th Dist. Summit No. 28184, 2017-Ohio-168, ¶ 11. A buyer must demonstrate all of the following elements for a fraud claim:

1) a representation, or in a situation where there was a duty to disclose, a concealment of fact; 2) which fact is material to the transaction; 3) made falsely,

with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; 4) with the intent of misleading another into relying upon it; 5) justifiable reliance on the misrepresentation; and 6) a resulting injury proximately caused by the reliance.

*Garvey v. Clevidence*, 9th Dist. Summit No. 22143, 2004-Ohio-6536, ¶ 12.

**{¶18}** The Petroskeys do not dispute that the purchase agreement contained an "'as is'" clause, nor do they dispute that they and their inspector had unimpeded access to inspect the home. They contend, however, that the defect with the roof was latent and that the Martins engaged in fraud.

**{¶19}** The Petroskeys argue that any repairs that the Martins had done to the roof were covered by shingles and "there is no mention of the severe ice damming problem in the King Home Inspection report demonstrating that any such defects were latent." The Ohio Supreme Court and this Court have drawn a distinction between the defect and the cause of the defect. The Ohio Supreme Court has found that, when determining whether a defect was "open to observation," the issue is not the "cause of the defect or the remedial effectiveness of [a repair]." *Layman* at 177-178 (buyer argued he merely saw a "symptom" of the defect). Similarly, this Court has stated that "the cause of the defect, the underlying problem, does not have to be open and obvious. If the defects are open and obvious * * *, the buyer is on notice to make further inquiry as to the underlying condition." *Hearty* at *8.

**{¶20}** Here, the Petroskeys contend that "[t]he roof suffered from ice damming that created leaks." In his deposition, Mr. Petroskey characterized the "ice damming" as "the root cause of the problem." Although the home inspector did not identify the cause of the "leaks" as "ice damming," he did notify the Petroskeys of "[e]vidence of" "past water leakage[,]" "past or present water staining[,]" and damage "from past or present leaks" in various locations

throughout the Home. Thus, the defect was not latent and the Petroskeys were "on notice to make further inquiry as to the underlying problem." *See Hearty* at \*8.

{¶21} As to their fraud claim, the Petroskeys challenge the trial court's conclusion that the evidence did not "establish that the [Martins] incorrectly filled the form out knowing it was false or * * * 'with such utter disregard and recklessness as to whether it [was] true or false that knowledge may be inferred.'" (Emphasis deleted.) The trial court also found "no justifiable reliance by the [Petroskeys]." Assuming, without deciding, that the trial court erred with respect to the knowledge prong, this Court must affirm its judgment if it was correct as to the justifiable reliance prong. *See Broida v. McGlumphy*, 9th Dist. Summit No. 20975, 2002-Ohio-4738, ¶ 15 (the absence of any element is fatal to recovery under fraud claim).

{¶22} The Petroskeys argue that they were entitled to rely on the representations made in the Disclosure Form. They further contend that neither the inspection report nor the amended purchase agreement demonstrate that they "were aware that the [H]ome needs a $49,700.00 complete reconstruction of the roof" as later estimated by their contractor.[1] Again, the Petroskeys miss the issue. The issue is not whether they were aware of the cause or magnitude of the defect. The issue is whether they were on notice of the defect, thereby, making their reliance on the earlier Disclosure Form unjustified.

{¶23} Buyers cannot justifiably rely on alleged misrepresentations in a disclosure form if they are later put on notice of the potential defect. *See Ponder*, 2017-Ohio-168, at ¶ 14-15. "[A] buyer who has obtained a negative home inspection cannot rely on statements made by a

---

[1] The Martins contend that this estimate was not properly submitted to the trial court under Civ.R. 56. When ruling on a summary judgment motion, a court may consider documents not expressly mentioned in Civ.R. 56(C) if they are incorporated in an affidavit. *Taylor v. Uhl*, 9th Dist. Lorain No. 13CA010441, 2014-Ohio-3090, ¶ 18, fn. 3. Mr. Petroskey authenticated and incorporated the estimate in his affidavit. Therefore, it was properly before the court.

seller prior to the home inspection." *Riccardi v. Levine*, 8th Dist. Cuyahoga No. 76215, 2000 Ohio App. LEXIS 2025, *10 (May 11, 2000). Rather, "[o]nce alerted to a possible defect, * * * the buyer has a duty to either [] (1) make further inquiry of the owner, who is under a duty not to engage in fraud, or (2) seek the advice of someone with sufficient knowledge to appraise the defect." (Internal citation omitted.) *Tipton v. Nuzum*, 84 Ohio App.3d 33, 38 (9th Dist.1992).

{¶24} The inspection report put the Petroskeys on notice of the possible leaking issues with the roof. For instance, the inspector noted that he found "[e]vidence of past or present water staining" on the ceilings in multiple rooms in the Home. In addition, he observed loose and damaged trim wood where it was in contact with the roof and damaged wood fascia "from past or present leaks." The inspector further found a "mold like substance [ ] in the main attic specifically near the lower north soffits." (Emphasis deleted.) It is noteworthy that Mr. Petroskey identified the location where they first experienced the roof leaking after purchasing the home as "just below where [the inspector] found mold in the attic."

{¶25} The inspection report also noted that roof repairs had been made and urged Mr. Petroskey to inquire further of the Martins. The inspector found "[e]vidence of repairs on the roof at various locations." He advised Mr. Petroskey to "[i]nquire with the seller regarding [the] history of [the] repairs and any potential warranties" and to inquire "as to the scope of the repairs." Mr. Petroskey admitted in his deposition that, although he "knew [the roof] had been replaced recently," he did not ask to see "anything regarding the installation" such as "any invoices" or "warranty information."

{¶26} Further, the inspector also recommended multiple times that Mr. Petroskey consult a qualified roofing contractor to evaluate the roof and estimate what repairs were needed. Nonetheless, Mr. Petroskey amended the purchase agreement and went forward with the

purchase of the Home prior to fully investigating this expense. The roofing estimate that the Petroskeys presented in opposition to the motion for summary judgment is dated August 15, 2014, approximately nine months after the purchase of the Home.

{¶27} Having received an inspection report that was inconsistent with the Disclosure Form, the Petroskeys were not justified in relying on the earlier statements contained in the Disclosure Form. *See Hearty*, 1999 Ohio App. LEXIS 5544 at *12 (no justifiable reliance when buyer had evidence of roof problems that were inconsistent with the seller's disclosure statement). Rather, at that point, it was their duty to make "further inquiry of the owner" or to seek the advice of a qualified roofing contractor. *See Tipton*, 84 Ohio App.3d at 38.

{¶28} The Petroskeys' sole assignment of error is overruled.

### III.

{¶29} Having overruled the Petroskeys' sole assignment of error, this Court affirms the judgment of the Lorain County Common Pleas Court.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, P.J.
CARR, J.
CONCUR.

APPEARANCES:

JONATHAN E. ROSENBAUM, Attorney at Law, for Appellants.

DAVID J. PASZ, Attorney at Law, for Appellees.