[Cite as *Mobley v James*, 2020-Ohio-380.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

MICHAEL MOBLEY, ET AL.,     :

     Plaintiffs-Appellants,     :

                            No. 108470

     v.     :

RONALD JAMES,     :

     Defendant-Appellee.     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 6, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-17-890671

---

### *Appearances:*

Bradley Hull, IV, *for appellants*.

Raymond J. Schmidlin, Jr., *for appellee*.

EILEEN A. GALLAGHER, P.J.:

{¶ 1} This case involves a dispute arising out of a residential real estate transaction between plaintiffs-appellants Michael Mobley ("Mobley") and AnnieRose Mobley (collectively, "buyers") and defendant-appellee Ronald James ("seller"). Buyers appeal from the trial court's decision granting seller's motion for summary judgment on buyers' claims for fraud, breach of contract and unjust

enrichment arising out of seller's alleged failure to disclose a history of sewer backups and "water intrusion" involving the property.

{¶ 2} For the reasons that follow, we affirm the trial court.

**Factual Background and Procedural History**

**The Purchase Agreement, Seller's Disclosures and Buyers' Inspection**

{¶ 3} On October 27, 2016, buyers executed a purchase agreement to purchase a single-family home located at 17606 Schenely Avenue, Cleveland, Ohio (the "property") from seller. Seller purchased the property in 1996 and lived on the property continuously for the 20 years prior to the sale.

{¶ 4} The purchase agreement incorporated an Ohio residential property disclosure form that seller had completed on October 8, 2016 (the "RPDF"). In the RPDF, seller denied knowledge of any of the following conditions with the property:

- "any current leaks, backups or other material problems with the water supply system or quality of the water";

- "any previous or current leaks backups or other material problems with the sewer system servicing the property";

- "any previous or current water leakage, water accumulation, excess moisture or other defects to the property, including but not limited to any area below grade, basement or crawl space";

- "any water or moisture related damage to floors, walls or ceilings as a result of flooding; moisture seepage; moisture condensation; ice damming; sewer overflow/backup; or leaking pipes, plumbing fixtures, or appliances" and

- "other known material defects in or on the property."

**{¶ 5}** The purchase agreement stated that the property was "being purchased in its 'AS IS' PRESENT PHYSICAL CONDITION" and was contingent upon the results of a professional general home inspection by buyers. Buyers signed the RPDF and acknowledged "that it is BUYER'S own duty to exercise reasonable care to inspect and make diligent inquiry of the SELLER or BUYER'S inspectors regarding the condition and systems of the Property." Buyers further acknowledged that "[o]wner makes no representations with respect to any offsite conditions. Purchaser should exercise whatever due diligence purchaser deems necessary with respect to offsite issues that may affect purchaser's decision to purchase the property."

**{¶ 6}** Seller testified that at some point prior to the closing, buyers' real estate agent contacted his real estate agent requesting further information regarding several items buyers had observed in the house, including why a sump pump had been installed in the basement and an explanation of the "controls" in the upstairs bathroom. Seller's real estate agent, in turn, contacted seller about these issues. Seller prepared a written response to buyers' inquiries, which he emailed to his real estate agent (the "supplemental disclosure"). With respect to the sump pump, seller stated:

> Many years before I bought this house, the previous owner, who was a "tinkerer," added the pump after there was a storm sewer backup in the neighborhood. It is NOT in use in order to keep the basement dry on a daily basis. It operated one or two times several years ago, when the storm sewers were overwhelmed again. The City has since cleaned them out and I have had no problems since.

On occasion I run water into the sump and let the pump run for exercise. It was replaced about 5 years ago.

{¶ 7} Seller testified that, based on his communications with his real estate agent, he believed his real estate agent had forwarded the supplemental disclosure to buyers' real estate agent and that buyers' real estate agent, in turn, had forwarded the supplemental disclosure to buyers because "we never had anymore [sic] communication regarding it, saying where is this document."

{¶ 8} Buyers hired Jagger Enterprises, Inc. d.b.a. Buckeye Home Inspections to perform a general home inspection of the property. James Jagger a.k.a. James Jiknialis, a certified home inspector, (the "home inspector") performed the home inspection on October 29, 2016. Mobley and buyers' real estate agent attended the home inspection. Seller was not present during the home inspection. The home inspector made a digital audio recording of his inspection, contemporaneously recording his observations and discussions with Mobley and buyers' real estate agent during the inspection.

{¶ 9} The home inspector testified that he had some questions about the upstairs bath thermostat and why there was a sump pump in the basement, which he raised with buyers' real estate agent. He stated that, in response, buyers' real estate agent emailed him a copy of seller's supplemental disclosure. The home inspector testified that he assumed that buyers' real estate agent had given buyers a copy of the supplemental disclosure because "that's what the agent told [him]."

{¶ 10} According to the home inspector, immediately following the inspection, while everyone was still on-site at the property, he gave Mobley and buyers' real estate agent (1) a CD containing the audio recording of the home inspection and (2) a carbon copy of a handwritten "material defects list" he had prepared during the inspection. He stated that later that day, he emailed a typewritten, PDF version of the material defects list (with "a few more pieces of information") to Mobley and buyers' real estate agent along with photos he had taken during the inspection (collectively, the "inspection report").[1]

{¶ 11} In the material defects lists, the home inspector identified a number of potential issues with the property, including the following:

> The following were noted as material defects. These items affect either health, safety, or utility of the inspected property and/or may cost more than $500.00 to correct by repair or replacement. * * *

> 4) Elevated moisture levels (100 points per *Tramex Moisture Encounter* electronic moisture meter) noted in red clay tiles at bottom of basement steps. No active water entry noted at time of inspection. Future leaks are possible.

> Please note — Basement appears to have been waterproofed. Recommend obtaining any warranties or other documents re: waterproofing.

> * * *

> 8) Seller has disclosed a history of backed up sewers.

---

[1] The home inspector testified that he considers the audio recording of the inspection to be his "inspection report" because it is more detailed than the material defects list. In their brief, however, appellants refer to the typewritten material defects list and photos from the inspection as the "inspection report." To avoid confusion, we follow appellants' lead and refer to the typewritten material defects list and photos from the inspection as the "inspection report" here.

* * *

*Please listen to the audio recording since that is your detailed inspection report.

{¶ 12} The home inspector indicated that he "noted" in his report that "[s]eller has disclosed a history of backed up sewers" because (1) buyers' real estate agent had informed Mobley, during the home inspection, that seller had disclosed a history of sewer backups and (2) the home inspector had "verified" this information through the supplemental disclosure buyers' real estate agent had forwarded to the home inspector. The home inspector testified that he saw nothing during the inspection to suggest that seller was attempting to conceal evidence of prior sewer backups.

{¶ 13} On November 2, 2016, buyers agreed to remove the inspection contingency in the purchase agreement provided seller had the boiler and water heater serviced and made certain other repairs. On December 21, 2016, title on the property transferred from seller to buyers.

**Post-Sale Sewer Backups**

{¶ 14} Ten-and-one-half months later, on November 5, 2017, the city's storm sewers backed up and water infiltrated the basement of the property. Buyers testified that five to six inches of sanitary sewage and water entered the basement through the basement's shower and sink drains after a "very heavy rain" that caused a "severe flood in the neighborhood." Buyers experienced a second "significant

water intrusion into the basement" in 2018[2] during a storm. Following these incidents, buyers learned that other residences in the neighborhood had had prior, ongoing problems with sewer backups. As a result of the incidents, buyers allegedly sustained over $25,000 in property damage, decreased property value and other expenses.

{¶ 15} Mobley acknowledged that the incidents occurred because the city's sewers were too small and lacked the capacity to handle large amounts of water during excessive rains. After the second incident in 2018, buyers had a back flow valve installed. After they installed the back flow valve, buyers had no further problems with sewer water backups in the basement.

{¶ 16} Buyers claimed that they did not receive a copy of the handwritten material defects list, the inspection report or any of the photographs from the home inspection prior to closing. Although Mobley confirmed, during his deposition, that the home inspector's October 29, 2016 email forwarding a copy of the inspection report to Mobley and buyers' real estate agent had his correct email address, he testified that he had never seen the email prior to his deposition and that he had never had any conversations with his real estate agent regarding the email. Mobley further testified that the "only thing" he had received from the home inspector prior to closing was a "hard CD," "delivered" to him after the inspection, "which didn't operate properly." Mobley stated that "it wasn't until after [buyers] went through

---

[2] There is some confusion in the record as to when this second incident occurred. In some of the materials, it is stated that the second incident occurred in April 2018; in other materials, it is stated that the second incident occurred in August 2018.

* * * all the things with the house," that the home inspector sent him a "drop box file that had all the additional information regarding the inspection."

**{¶ 17}** Mobley testified that when he first saw the inspection report sometime after November 5, 2017, he was surprised to learn that the seller had disclosed a history of sewer backups because he "never received a history of any sewer backup" and was "never told that the house actually flooded."

**Buyers' Lawsuit against Seller**

**{¶ 18}** On December 20, 2017, buyers filed a complaint, asserting claims of fraud, breach of contract and unjust enrichment against seller. Buyers alleged that seller had made false representations and/or concealed material facts from buyers because "[i]ssues involving water intrusion," "[i]ssues with plumbing," "[i]ssues with sewer backup," "substantial damage to the basement" and the "substantial vulnerability of the property to damage" were not disclosed on the RPDF. Buyers claimed that seller had made the misrepresentations knowing that they were false, or with reckless disregard for their truth or falsity, to induce buyers to purchase the property. Buyers further alleged that they had justifiably relied on seller's misrepresentations when purchasing the property. Buyers sought to recover compensatory and punitive damages, plus interest, costs and attorney fees, from seller. Seller filed an answer in which he denied the material allegations of buyers' complaint and asserted various affirmative defenses.[3]

---

[3] On August 20, 2018, buyers filed an amended complaint, naming Jagger Enterprises, Inc. d.b.a. Buckeye Home Inspections and James A. Jiknialis as additional defendants (the "home inspector defendants"). Buyers asserted claims of fraud and

**{¶ 19}** In discovery responses submitted in June 2019, seller stated:

INTERROGATORY NO. 27:  Identify all instances during which there was backup, water seepage, water intrusion, or other intrusion of liquids into any part of the interior of 17606 Schenely Avenue, Cleveland, Ohio 44119 during the time you owned the Schenely Avenue residence.

RESPONSE:  As previously disclosed, approx. 10-12 years ago, after an exceptionally hard rain, water backed up under the laundry tub and shower drain.  It rose to only a small area (approx. 6 sq. ft), then sump pump kicked in and water receded.

**{¶ 20}** During his deposition, seller testified that this was the same incident he had described in his supplemental disclosure, i.e., in which the sump pump "operated one or two times several years ago, when the storm sewers were overwhelmed."  Seller stated that he "couldn't put a specific date on it," but that he believed the incident occurred "four to five years prior to his retirement" in 2012, i.e., "maybe in '08, sometime around in there."  He further testified that although he had referenced the incident in his supplemental disclosure, he did not disclose it in the RPDF because the RPDF had only a "five-year look back" for sewer backups and the incident had occurred more than five years before he completed the RPDF.  As he explained:

---

breach of contract against the home inspector defendants, alleging that the home inspector (1) had failed to disclose information to buyers that he had received as part of the home inspection and (2) had failed to provide a "true and accurate copy" of the home inspection report to buyers before buyers purchased the property.  In March 2019, after the trial court granted the home inspector defendants' motion to stay litigation and compel arbitration of the claims against them (based on an arbitration provision in the home inspection agreement), buyers dismissed their claims against the home inspector defendants without prejudice.

Q. * * * What history of water intrusion into this house on Schenely was there during the time that you owned it?

A. I sent a document to them per the request of their realtor and explained one time I had a sewer backup, the sump pump was in place, the sump pump activated and drained it back down.

Prior to that I had nothing, post that I had nothing. After the sewer backup that time the city came and cleaned all the sewers out. For like two weeks they were working all over the neighborhood and after that I had no problems.

* * *

Q. * * * At least one or two times that you're aware of the sump pump was running?

A. It ran, correct and handled the backup.

Q. Okay. Now was there backup of water that literally came into the basement?

A. Yes, a small area, three, four feet.

Q. How many times?

A. I can recall one specific time, but I wrote in here one or two times I think just to be generous and say that it did happen, if that makes sense.

* * *

Q. * * * And when you used the term several years ago, you're talking about several years prior to 2016, of course?

A. Yes.

Q. Okay. Can you identify approximately what year this backup occurred?

A. * * * I retired in 2012, I was writing this in '16 and I know it was several, and I'm going to say four to five years previous to my retirement that this had occurred. So based on that, it's over five years by several, but I couldn't put a specific date on it.

{¶ 21} Seller stated that when this sewer backup occurred, water came up through the basement drain and went "[j]ust in the general surrounding area," "three or four feet," and that the water receded when the sump pump activated. Seller testified that no "flooding" of the basement occurred and that he did not sustain any property damage as a result of the sewer backup. Seller further testified that he "ran water through" the sump pump periodically "to make sure that it worked" and that he had previously replaced the sump pump after he discovered, during one of these checks, that it was not working. Seller also stated that he had the basement waterproofed in or around November 2012 "to relieve moisture on the walls."

**Seller's Motion for Summary Judgment**

{¶ 22} On January 31, 2019, seller filed a motion for summary judgment. Seller argued that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law on all buyers' claims because (1) buyers had agreed to purchase the property "as is"; (2) the basement flooding was "caused by the fact that the city sewers lacked the capacity to accommodate heavy rainfall" and not due to some "defect with respect to the subject property"; (3) seller's representations on the RPDF were not fraudulent because the sewer backup seller had experienced occurred eight years before the sale and seller had no duty to disclose sewer backups on the RPDF that occurred more than five years earlier; (4) seller had referenced the prior sewer backup in the supplemental disclosure and (5) Mobley was aware of the "history of sewer backups" affecting the property and the

risk of future water intrusion based on his participation in the home inspection and his receipt of the handwritten material defects list, inspection report and audio recording of the home inspection. [4]

{¶ 23} Buyers opposed the motion, arguing that there were genuine issues of material fact that precluded summary judgment on each of their claims. Pointing to (1) seller's statements in the supplemental disclosure that the sump pump had "operated one or two times several years ago, when the storm sewers were overwhelmed again," (2) evidence that seller had previously replaced the sump pump and waterproofed the basement in 2012 and (3) evidence that the basement flooded twice after buyers purchased the property, buyers argued that seller's representation in the RPDF that he was "unaware of any history of water intrusion into the property" was "misleading and false." Buyers also argued that "given the widespread scope of floodings and the history of floodings throughout the neighborhood," seller was "on notice of water intrusion into his residence and generally in the neighborhood" that he had a duty to disclose. Buyers claimed that they had justifiably relied on seller's representations in the RPDF and that their inspection of the property did not preclude them from prevailing on their fraud

---

[4] In support of his motion for summary judgment seller submitted (1) an affidavit from the home inspector; (2) copies of the handwritten material defects list, the inspection report and the email from the home inspector forwarding the inspection report to Mobley and buyers' real estate agent; (3) a flash drive containing the audio recording of the home inspection; (4) copies of the purchase agreement, addenda to the purchase agreement and related documents; (5) a copy of the RPDF; (6) a copy of the transcript of Mobley's deposition; (7) a copy of seller's supplemental disclosure and (8) copies of documentation relating to buyers' alleged damages.

claim because (1) "the property's and neighborhood's history of sewer backups was not clearly and concisely identified to [buyers] by the home inspector or any third party" and (2) "independent evidence was not visible to them that would have reasonably put them on notice of the issue of water intrusion into the house."

{¶ 24} With respect to their contract claim, buyers argued that the seller's disclosures on the RPDF were a material part of the purchase agreement and that buyer breached that agreement when he "failed to deliver a house that met the specifications" of that agreement, i.e., "a house without a history of water intrusion over the preceding five years." With respect to their unjust enrichment claim, buyers contended that seller had been unjustly enriched "to the extent of more than $20,000" (i.e., the damages they sustained from the 2017 and 2018 floods) when he sold the property to buyers knowing that they were unaware of the "severe problems" with the house. [5]

**The Trial Court's Decision**

{¶ 25} On April 21, 2019, the trial court granted seller's motion for summary judgment on all buyers' claims. Although the trial court indicated that it believed

---

[5] In support of their opposition, buyers submitted: (1) an affidavit from Michael and AnnieRose Mobley; (2) documentation reflecting the transfer of the property from seller to buyers; (3) copies of the purchase agreement and related documents, including various addenda, and the removal of contingencies to the purchase agreement; (4) a copy of the RPDF; (5) copies of the inspection report and seller's supplemental disclosure regarding the sump pump; (6) a copy of seller's responses to buyers' discovery requests; (7) copies of the transcripts of the depositions of seller and the home inspector and (8) copies of communications with and by Councilman Michael Polensek from November 2017 and January 2018 regarding street and basement flooding in portions of Ward 8.

seller had not been candid in his representations in the RPDF, the trial court nevertheless found that, after construing the evidence in the light most favorable to the buyers, there was no genuine issue of material fact that seller was entitled to judgment as a matter of law on buyers' claims. The trial court explained:

> Although the Court is dismayed with Defendant James' apparent lack of candor on the disclosure form, the law is clear. Plaintiffs not only had the opportunity to inspect the property, they completed an inspection. That inspection disclosed the exact issue(s) for which they filed suit. Defendant James cannot be accused of actively concealing unfavorable conditions when those same conditions were discovered through a reasonable inspection. By completing the inspection, the law alleviates Defendant James of his prior deception.
>
> Further, the Court finds it improbable that the Plaintiffs paid for a home inspection, attended the actual inspection, were given verbal warnings of potential problems with the basement, failed to follow-up with the inspector Defendant Jiknialis to receive the written inspection prior to sale, proceeded with the sale regardless, and now ask this Court to find they had no knowledge of the issues. Especially considering Plaintiff Michael Mobley was orally advised of potential problems during the inspection itself. Although Defendant James' conduct is certainly dubious at the best, the law is clear under these circumstances.

{¶ 26} Buyers appealed, raising the following assignment of error for review:

> The Trial Court erroneously determined that no genuine issue of material fact exists, and that reasonable minds can come to only one conclusion after construing the evidence in the light most favorable to Michael Mobley and AnnieRose Mobley, that summary judgment should be granted in favor of Ronald James on all claims asserted by the Mobleys against him.

## Law and Analysis

### Standard of Review

{¶ 27} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671

N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 28} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 29} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

**Buyers' Motion for Summary Judgment on Fraud Claim against Sellers**

{¶ 30} Buyers contend that the trial court erred in granting summary judgment in favor of seller on buyers' fraud claim[6] because seller fraudulently "failed to disclose a history of water intrusion into the property." Specifically, buyers argue that because seller was "actually deceptive, as found by the [c]ourt," "[t]he mere fact that [buyers] had a home inspection does not relieve [seller] of his dishonesty and fraudulent conduct in the real property disclosure forms."

{¶ 31} As a general rule, Ohio follows the doctrine of caveat emptor in real estate transactions, which precludes a purchaser from recovering for a defect if: "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Layman v. Binns*, 35 Ohio St.3d 176, 519 N.E.2d 642 (1988), syllabus. "'The doctrine of caveat emptor is designed to finalize real estate transactions by preventing disappointed real estate buyers from litigating every imperfection existing in residential property.'" *Psarras v. Rayburn*, 11th Dist. Geauga No. 2018-G-0181, 2019-Ohio-2168, ¶ 54, quoting *Thaler v. Zovko*, 11th Dist. Lake No. 2008-L-091, 2008-Ohio-6881, ¶ 31. However, a seller may still be liable to a buyer if the seller fails to disclose known latent conditions. *See, e.g., Binns* at 178 ("a vendor has a duty to disclose material facts

---

[6] Buyers do not dispute that the trial court properly entered summary judgment on their breach of contract and unjust enrichment claims. Accordingly, we do not address those claims here.

which are latent, not readily observable or discoverable through a purchaser's reasonable inspection").

{¶ 32} The elements of fraud are: (1) a representation of fact (or where there is a duty to disclose, concealment of a fact); (2) that is material to the transaction at issue; (3) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is true or false; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the misrepresentation (or concealment) and (6) resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

{¶ 33} While caveat emptor still applies, R.C. 5302.30 requires that a seller of residential property complete and deliver to a prospective purchaser a residential property disclosure form disclosing "material matters relating to the physical condition of the property" and "any material defects in the property" that are "within the actual knowledge" of the seller. R.C. 5302.30(C), (D); *see also Hendry v. Lupica*, 8th Dist. Cuyahoga No. 105839, 2018-Ohio-291, ¶ 7 ("'R.C. 5302.30 requires sellers of real estate to disclose patent or latent defects that are within their actual knowledge on a residential property disclosure form.'"), quoting *Wallington v. Hageman*, 8th Dist. Cuyahoga No. 94763, 2010-Ohio-6181, ¶ 17. R.C. 5302.30(E)(1) provides that "[e]ach disclosure of an item of information that is required to be made in the property disclosure form * * * and each act that may be performed in making any disclosure of an item of information shall be made or performed in good faith." "Good faith" means "honesty in fact." R.C. 5302.30(A)(1).

{¶ 34} If a seller fails to disclose a material fact on the disclosure form with the intention of misleading the buyer and the buyer relies on the disclosure form, the seller may be liable for a resulting injury. *Wallington* at ¶ 18; *Pedone v. Demarchi,* 8th Dist. Cuyahoga No. 88667, 2007-Ohio-6809, ¶ 31. However, where, a party "'has had the opportunity to inspect the property, he is charged with knowledge of the conditions that a reasonable inspection would have disclosed.'" *Pedone* at ¶ 33, quoting *Nunez v. J.L. Sims Co., Inc.*, 1st Dist. Hamilton No. C-020599, 2003-Ohio-3386, ¶ 17. Sellers of residential real property have no duty to inspect their property or to otherwise acquire additional knowledge regarding defects on their property. *Roberts v. McCoy*, 2017-Ohio-1329, 88 N.E.3d 422, ¶ 17 (12th Dist.). "[T]he duty to conduct a full inspection falls on the purchasers and the disclosure form does not function as a substitute for such careful inspection." *Id.*

{¶ 35} In this case, the purchase agreement states that the property is being sold in its "'as is' present physical condition." "An 'as is' sale indicates that the buyer has agreed to 'make his or her own appraisal' 'and accept the risk' of making the wrong decision." *AE Prop. Servs., L.L.C. v. Sotonji*, 8th Dist. Cuyahoga No. 106967, 2019-Ohio-786, ¶ 23, quoting *McDonald v. JP Dev. Group, L.L.C.*, 8th Dist. Cuyahoga No. 99322, 2013-Ohio-3914, ¶ 15. An "as is" clause in a real estate purchase agreement relieves a seller of the duty to disclose latent defects and precludes a claim against a seller based on "passive" nondisclosure. *See, e.g., Pedone* at ¶ 34; *McClintock v. Fluellen,* 8th Dist. Cuyahoga No. 82795, 2004-Ohio-58, ¶ 18; *Brown v. Lagrange Dev. Corp.*, 6th Dist. Lucas No. L-09-1099, 2015-Ohio-

133, ¶ 20.  It does not, however, protect a seller from liability for "positive" acts of fraud, i.e., "'a fraud of commission rather than omission,'" such as fraudulent misrepresentation or fraudulent concealment, including fraudulent misrepresentations in an RPDF.  *Brown* at ¶ 20, quoting *Majoy v. Hord*, 6th Dist. Erie No. E-03-037, 2004-Ohio-2049, ¶ 18; *Pedone* at ¶ 34; *McClintock* at ¶ 18.  In other words, an "as is" clause is "inapplicable if the property disclosure form contains misrepresentations."  *Diemert v. Binstock*, 8th Dist. Cuyahoga No. 107893, 2019-Ohio-3368, ¶ 22.

{¶ 36} Buyers' fraud claim is based on the following representations made by the seller in the RPDF:

B) SEWER SYSTEM:

* * *
Do you know of any previous or current leaks, backups or other material problems with the sewer system servicing the property?
☐ Yes  ☒ No If "Yes," please describe and indicate any repairs completed (but not longer than the past 5 years): _____ * * *

D) WATER INTRUSION:

Do you know of any previous or current water leakage, water accumulation, excess moisture or other defects to the property, including but not limited to any area below grade, basement or crawl space? ☐ Yes  ☒ No  If "Yes," please describe and indicate any repairs completed: _____ * * *

Do you know of any water or moisture related damage to floors, walls or ceilings as a result of flooding; moisture seepage; moisture condensation; ice damming; sewer overflow/backup; or leaking pipes, plumbing fixtures, or appliances? ☐ Yes ☒ No  If "Yes," please describe and indicate any repairs completed: _____ * * *

{¶ 37} Buyers contend that seller misrepresented the condition of the property in the RPDF because he failed to disclose the existence of one or more incidents "several years" prior to the sale where the city's sewers exceeded their capacity, the sewers backed up and water from the sewers backed up into the basement.

{¶ 38} We need not decide whether seller's representations in the RPDF relating to the sewer system or "water intrusion" were knowingly false (or whether a genuine issue of material fact exists as to whether seller's representations in the RPDF were knowingly false) to resolve this appeal. Even if seller had knowingly misrepresented the condition of the property in the RPDF, there is no genuine issue of material fact that buyers could not have justifiably relied on those misrepresentations when purchasing the property based on (1) Mobley's receipt of seller's supplemental disclosure prior to closing and (2) the information the home inspector provided Mobley regarding the "history of sewer backups disclosed by the seller," the history of sewer backups in the neighborhood generally and the potential for future sewer backups and water intrusion on the property during the home inspection.

{¶ 39} In determining whether a party justifiably relied on a representation, courts must consider all of the relevant circumstances, including the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective knowledge and means of knowledge. *See, e.g., Kovacic v. All States Freight Sys.,* 8th Dist. Cuyahoga No. 69926, 1996 Ohio App. LEXIS

3474, 18 (Aug. 15, 1996); *McDonald v. Fogel*, 11th Dist. Trumbull No. 2018-T-0079, 2019-Ohio-1717, ¶ 20. Justifiable reliance reflects "a balance between reliance and responsibility":

> "The rule of law is one of policy and its purpose is, while suppressing fraud on the one hand, not to encourage negligence and inattention to one's own interests. There would seem to be no doubt that while in ordinary business transactions, individuals are expected to exercise reasonable prudence and not to rely upon others with whom they deal to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary."

*AmeriFirst Sav. Bank v. Krug*, 136 Ohio App.3d 468, 495-496, 737 N.E.2d 68 (2d Dist.1999), quoting 50 Ohio Jurisprudence 3d, Fraud and Deceit, Section 132 (1984).

{¶ 40} Generally, "[t]he 'question of justifiable reliance is one of fact.'" *Mar Jul, L.L.C. v. Hurst*, 4th Dist. Washington No. 12CA6, 2013-Ohio-479, ¶ 61, quoting *Crown Property Dev., Inc. v. Omega Oil Co.*, 113 Ohio App.3d 647, 657, 681 N.E.2d 1343 (12th Dist.1996). Where, however, no genuine issue of material fact exists as to whether a party justifiably relied on a misrepresentation, "summary judgment on that issue is appropriate." *March v. Statman*, 1st Dist. Hamilton No. C-150337, 2016-Ohio-2846, ¶ 22.

{¶ 41} First, with respect to seller's supplemental disclosure, although buyers submitted an affidavit in support of their motion for summary judgment in which they averred that the supplemental disclosure "was not disclosed to the Mobleys and[/]or they never received this report from [buyer] or [the home

inspector] prior to closing on the residence," Mobley testified at his deposition that he had, in fact, received a copy of the supplemental disclosure before buyers closed on the property:

> Q. Mr. Mobley, I'm showing you what has been marked as Defendant's Exhibit-B, Mobley Exhibit B. Are you familiar with that document, sir?
>
> A. Yes.
>
> Q. Did you see that document before you closed on the house sir?
>
> A. Yes, I did.
>
> Q. It's my understanding that Mr. James prepared this and sent it to his realtor on or about October 27th, October 28th, 2016. Does that sound about right to you, sir?
>
> A. Yes.
>
> Q. And then either his realtor or your realtor gave it to you before closing; is that correct, sir?
>
> * * *
>
> A. I do remember this, yes.
>
> Q. So you remember seeing that before the property closed?
>
> A. Yes.

{¶ 42} In addition, the audio recording of the inspection indicates that the home inspector specifically referenced seller's supplemental disclosure during the home inspection, when explaining the operation of the basement sump pump to Mobley:

> *According to that piece of paper from the owner*, this old ancient old sump was installed years ago by somebody else and it was designed that when the sewers backed up, the sump pump was supposed to capture

the water and pump it out of the building. That is what this is reportedly about, ok?

(Emphasis added.)

{¶ 43} A party cannot create a genuine issue of material fact to defeat summary judgment simply by submitting a self-serving affidavit that contradicts other facts and evidence in the record. *See, e.g., Byrd v. Smith*, 110 Ohio St.3d 24, 30, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 28 ("'Ordinarily, under [Civ.R.] 56(C), when an affidavit is inconsistent with affiant's prior deposition testimony as to material facts and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions in her prior testimony, the affidavit does not create a genuine issue of fact which would preclude summary judgment.' * * * [A]n affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment."), quoting *Lemaster v. Circleville Long Term Care, Inc.*, 4th Dist. Pickaway No. 87 CA 2, 1988 Ohio App. LEXIS 566, 3 (Feb. 22, 1988); *see also Davis v. Snack Shack (Open Pantry)*, 8th Dist. Cuyahoga No. 107376, 2019-Ohio-1887, ¶ 27.

{¶ 44} As this court has explained:

"[W]hen the moving party puts forth evidence tending to show that there are no genuine issues of material fact, the nonmoving party may not avoid summary judgment solely by submitting a self-serving affidavit containing no more than bald contradictions of the evidence offered by the moving party. To conclude otherwise would enable the nonmoving party to avoid summary judgment in every case, crippling the use of Civ.R. 56 as a means to facilitate the early assessment of the merits of claims, pre-trial dismissal of meritless claims, and defining and narrowing issues for trial." (Citations omitted.)

*Telecom Acquisition Corp. I, Inc. v. Lucic Ents., Inc.*, 2016-Ohio-1466, 62 N.E.3d 1034, ¶ 92 (8th Dist.), quoting *Bank One, N.A. v. Burkey*, 9th Dist. Lorain No. 99 CA007359, 2000 Ohio App. LEXIS 2517, 14-15 (June 14, 2000).

{¶ 45} In this case, buyers have not even acknowledged, much less offered any explanation for, the inconsistencies between Mobley's deposition testimony and the averments made in his subsequent affidavit.

{¶ 46} Buyers also claim that they never received a copy of the handwritten list of material defects or the inspection report from the home inspector prior to closing and, therefore, were never advised that "[s]eller has disclosed a history of backed up sewers" or that "there were elevated moisture levels * * * in red clay bricks at the bottom of the basement steps," such that "future leaks are possible."

{¶ 47} As the trial court observed, this claim is not credible. First, it is highly unlikely that a party who paid for a home inspection would close on the property without seeing or receiving the inspection report. Second, several of the "conditions" to the removal of the inspection contingency were items specifically identified in the handwritten material defects list and inspection report.

{¶ 48} Nevertheless, even assuming a reasonable factfinder could find that buyers did not receive a copy of the handwritten material defects list or inspection report prior to closing, we would still conclude that there is no genuine issue of material fact that buyers could not have justifiably relied on any alleged misrepresentations in the RPDF relating to the matters at issue based on the information Mobley received from the home inspector during the home inspection.

{¶ 49} Although buyers contend that they were defrauded because "the property's and neighborhood's history of sewer backups was not clearly and concisely identified to [them]" prior to closing, it is clear from listening to the audio recording of the home inspection that the home inspector mentioned the potential for a sewer backup affecting the property to Mobley at least three times during the inspection.

{¶ 50} At the outset of the inspection, the home inspector stated:

> I work and live in this neighborhood. * * * We've had sewer problems over the years. Allegedly they're supposed to be resolved with all this sewer stuff going on around here, but I cannot predict the future. One thing I do know is that not all insurance policies cover sewer backups so if you are buying your insurance * * * make sure you get the coverage you are comfortable with.

{¶ 51} During the inspection of the basement, the home inspector addressed the issue of moisture in the basement and the potential for water leaks or sewer backups affecting the property with Mobley as follows:

> Home Inspector: We've had a fair amount of rain lately. To give some perspective, I don't see active water leaking. I think there is some potential to see a leak in this basement again. The walls primarily at the bottom of the basement stairs have some high moisture meter readings based on my Tramex meter. Common in these older homes. * * * This is what you find in these older homes, you have moisture in the walls. May leak, may not. * * *
>
> Let me continue with perspective. If I had to give the basement a rating like 0 is totally bone dry and 10 is really wet, I'd say you're about a 1 to a 2. * * * And we also talked about the potential for a sewer backup here.
>
> [Mobley]: Because of the city, what's going on outside.
>
> Home Inspector: Because of the infrastructure of the city, right. You got it. So if you buy these older places, and I own one, you take a certain chance, okay?

{¶ 52} At the conclusion of the inspection, the home inspector once again mentioned to Mobley that the seller had disclosed a history of sewer backups and that there was a potential for future water leaks or sewer backups affecting the property:

> I would say, if I had to give this house a grade like you get in school, this would be an A-minus house. In other words, real good, solid house; needs a few things to raise it up to an A level.
>
> * * *
>
> Item 4. Elevated moisture levels 100 points per Tramex meter noted in red clay tile walls at the bottom of the basement steps. No active water entry and the time of inspection. Future leaks, however, are possible so there is some element of risk.
>
> * * *
>
> Number 8. The seller has disclosed a history of backed up sewers. * * *

{¶ 53} As such, there is no genuine issue of material fact that buyers were on notice that (1) there was a history of sewer backups affecting both the property specifically and the neighborhood generally and (2) there was a risk of additional sewer backups and water intrusion affecting the property in the future — the very issues buyers contend seller failed to disclose to them. "Buyers cannot justifiably rely on alleged misrepresentations in a disclosure form if they are later put on notice of the potential defect." *Petroskey v. Martin*, 2018-Ohio-445, 104 N.E.3d 1021, ¶ 23, 27 (9th Dist.) (where buyers received information from inspection that was "inconsistent" with seller's representations on disclosure form, buyers were not justified in relying on earlier statements contained in disclosure form), citing *Ponder v. Culp*, 9th Dist. Summit No. 28184, 2017-Ohio-168, ¶ 14-15 (buyers could

not have justifiably relied upon sellers' alleged nondisclosures and misrepresentations in disclosure form where home inspector warned sellers that there was a risk of future water intrusion into basement laundry room due to the slope of the driveway and buyers elected to purchase the property "as is," without further investigation); *see also Riccardi v. Levine*, 8th Dist. Cuyahoga No. 76215, 2000 Ohio App. LEXIS 2025, 10 (May 11, 2000) ("[A] buyer who has obtained a negative home inspection cannot rely on statements made by a seller prior to the home inspection.").

{¶ 54} To the extent that the information buyers received regarding these issues was not as "clear" and "concise" as buyers may have liked, buyers had a duty to further inquire. *Petroskey* at ¶ 23 ("'[O]nce alerted to a possible defect, * * * the buyer has a duty to either[:] (1) make further inquiry of the owner, who is under a duty not to engage in fraud, or (2) seek the advice of someone with sufficient knowledge to appraise the defect.'"), quoting *Tipton v. Nuzum*, 84 Ohio App.3d 33, 38, 616 N.E.2d 265 (9th Dist.1992); *Li-Conrad v. Curran*, 2016-Ohio-1496, 50 N.E.3d 573, ¶ 34 (11th Dist.) (where the buyer had "notice of potential crack problems in the * * * foundation wall," but "did not take any steps to investigate the issue or enter into further negotiations with the [sellers]," buyer was "preclude[d] * * * from asserting that she justifiably relied upon any false statements made by [sellers]"). Buyers, however, did not further inquire regarding these issues prior to closing.

{¶ 55} Seller met his burden under Civ.R. 56(C), presenting evidence of specific facts in the record demonstrating his entitlement to summary judgment on buyers' fraud claim. Buyers, however, did not meet their reciprocal burden, i.e., pointing to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial, to defeat summary judgment. Because it cannot be said, based on the record before us, that buyers justifiably relied on any alleged misrepresentations by seller with respect to the matters at issue, the trial court properly granted seller's motion for summary judgment on buyers' fraud claim. Buyers' assignment of error is overruled.

{¶ 56} Judgment affirmed.

It is ordered that appellee recover from appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
MARY EILEEN KILBANE, J., CONCUR